## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

**KRISTIN WORTH,**

**AUSTIN DYE,**

**AXEL ANDERSON,**

**MINNESOTA GUN
OWNERS CAUCUS,**

**SECOND AMENDMENT
FOUNDATION,**

Civil Rights Complaint
42 U.S.C. § 1983

**FIREARMS POLICY
COALITION, INC.,** and

Plaintiffs,          Civil Action No. _____

   **v.**

**JOHN HARRINGTON, in his
individual capacity and in his
official capacity as Commissioner
of the Minnesota Department of
Public Safety,**

**DON LORGE, in his individual
capacity and in his official
capacity as Sheriff of Mille
Lacs County, Minnesota,**

**TROY WOLBERSEN, in his
individual capacity and in his
official capacity as Sheriff of
Douglas County, Minnesota,** and

**DAN STARRY, in his individual
capacity and in his official
capacity as Sheriff of
Washington County, Minnesota,**

Defendants.

## COMPLAINT

COME NOW Plaintiffs Kristin Worth, Austin Dye, Axel Anderson, Minnesota Gun Owners Caucus, Second Amendment Foundation, and Firearms Policy Coalition, Inc., by and through their attorneys, and complain of Defendants John Harrington, Don Lorge, Troy Wolbersen, and Dan Starry as follows:

## INTRODUCTION

1. This is an action to uphold Plaintiffs' right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution. This right "guarantee[s] the individual right to possess and carry" firearms. *District of Columbia v. Heller,* 554 U.S. 570, 635 (2008).

2. In *Heller*, the U.S. Supreme Court defined "bear arms" as to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id*. at 584.

3. In *McDonald v. City of Chicago*, 561 U.S. 742, 750, 791 (2010), the Supreme Court confirmed that the rights protected by the Second Amendment are "among those fundamental rights necessary to our system of ordered liberty," and held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment.

4.  "The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, 554 U.S. at 634. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id*. at 634-35.

5.   The Supreme Court in *Heller* held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592. This right is particularly important when it comes to handguns, as the *Heller* Court recognized that the handgun is "the quintessential self-defense weapon" in the United States, and it identified invalidated bans on carrying handguns as among the most "severe restriction(s)" in our Nation's history. *See id.* at 629 (citing, *e.g.*, *Nunn v. State*, 1 Ga. 243, 251 (1846)).

6.  Plaintiffs wish to exercise their fundamental, constitutionally guaranteed right to carry loaded, operable handguns on their person, outside their homes, while in public, for lawful purposes including immediate self-defense. But they cannot because of the laws, regulations, policies, practices, and customs that Defendants have been enforcing and continue to actively enforce today.

7.  The State of Minnesota prohibits a certain class of law-abiding, responsible citizens—namely, adults who have reached the age of 18 but are not yet 21—from fully exercising the right to keep and bear arms. At 18 years of age, law-abiding citizens in this country are considered adults for almost all purposes and certainly

3

for the purposes of the exercise of fundamental constitutional rights. Yet the State bans such persons from carrying a handgun outside their home or automobile, even though the State allows all other law-abiding adults to obtain a permit to carry firearms in public.

8. Minnesota generally bars the carrying of handguns by ordinary citizens in public for self-defense unless they first acquire a permit to carry under Minn. Stat. § 624.714 subd. 1a.

9. Plaintiffs and those similarly situated are absolutely ineligible to receive a permit to carry even though they are adult individuals over 18 years old, because they are under 21. Minn. Stat. § 624.714 subd. 2(b)(2).

10. Even though the U.S. Supreme Court in *Heller* declared that to "bear arms" includes the "carry [of a firearm] . . .  in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person," 554 U.S. at 584, Plaintiffs and those similarly situated are prohibited on pain of criminal sanction from carrying a handgun in public, pursuant to Minn. Stat. § 624.714, and ineligible to obtain a permit to carry pursuant to Minn. Stat. § 624.714 subd. 2(b)(2).

11. Minn. Stat. § 624.714 creates the only real avenue for ordinary citizens to legally carry a handgun in public. Defendants have prohibited a particular class of persons, including Plaintiffs Kristin Worth, Austin Dye, and Axel Anderson from obtaining such a permit, thereby categorically prohibiting them from any means of lawfully

carrying a handgun on their person in public, in direct violation of the Second and Fourteenth Amendments to the United States Constitution.

12. Throughout American history, arms carrying was a right available to all peaceable citizens. Sometimes, it was even a duty. *See e.g.*, David B. Kopel & Joseph G.S. Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. U. L.J. 495, 573–577, 587 (2019) (listing statutes requiring arms carrying by members of the general public to travel, work in the fields, work on roads and bridges, attend church, and attend court).

13. Moreover, young adults between 18 and 21 were fully protected by the Second Amendment at the time of its ratification. Hundreds of statutes from the colonial and founding eras required 18-to-20-year-olds to keep and bear arms. *See generally The Second Amendment Rights of Young Adults*, 43 S. Ill. U. L.J. at 573–577, 587.

14. At the time of the Founding, peaceable individuals aged 18 and above had the right to carry arms for self-defense and other lawful purposes.

15. Yet, Minnesota law erects an absolute barrier to the exercise of this right for Plaintiffs Worth, Dye, and Anderson, and all similarly situated 18-to-20-year-old citizens, by rendering them statutorily ineligible for the permit that the State mandates to lawfully carry a handgun within its borders. A first violation of Minn. Stat. § 624.714 is a gross misdemeanor punishable by a fine up to $3,000 and incarceration for up to one year; a second or subsequent offense is a felony punishable by a fine up to $10,000 and incarceration for up to five years. Minn. Stat. §§ 609.03(1, 2), 624.714 subd. 1a.

5

16.   Minn. Stat. § 624.714 prohibits carrying a handgun on one's person or in any place except one's place of residence or place of business, target ranges, or hunting grounds without a permit, while simultaneously declaring all adults under the age of 21 ineligible for the permit. Consequently, Section 624.714 currently bars and poses a continuing threat of barring Plaintiffs and all those similarly situated on pain of criminal sanction from carrying handguns—even for self-defense—upon the public streets and public property, in direct violation of the Second and Fourteenth Amendments to the United States Constitution, as held by the U.S. Supreme Court in *Heller* and *McDonald*.

17.   Indeed, Defendants' laws, regulations, policies, and enforcement practices prevent law-abiding adults such as Plaintiffs from exercising their fundamental, individual right to bear loaded, operable handguns outside the home.

18.   While Minnesota's ban is unconstitutional on its face, it is particularly illegitimate as applied to young women such as Plaintiff Worth. Females between the ages of 18 and 21 commit violent offenses at an exceptionally low rate, and there is absolutely no basis for broadly prohibiting them from carrying firearms in public.

**PARTIES**

19.   Plaintiff Kristin Worth is a natural person, over the age of 18 but under the age of 21, a citizen of Mille Lacs County, Minnesota and the United States. Plaintiff Worth has never been charged with nor convicted of any misdemeanor or felony offense. It is her present intention and desire to lawfully carry a handgun in public, including

6

for purposes of self-defense. As a result of Defendants' active enforcement of Minn. Stat. § 624.714 subd. 2(b)(2), however, Plaintiff Worth is precluded from obtaining a permit and therefore subject to the carry prohibitions specified in Section 624.714 subd. 1a, which bar her from exercising her fundamental right to carry a handgun in public for self-defense and other lawful purposes.

20.    Plaintiff Austin Dye is a natural person, over the age of 18 but under the age of 21, a citizen of Washington County, Minnesota and the United States. Plaintiff Dye has never been charged with nor convicted of any misdemeanor or felony offense. It is his present intention and desire to lawfully carry a handgun in public, including for purposes of self-defense. As a result of Defendants' active enforcement of Minn. Stat. § 624.714 subd. 2(b)(2), however, Plaintiff Dye is precluded from obtaining a permit and therefore subject to the carry prohibitions specified in Section 624.714 subd. 1a, which bar him from exercising his fundamental right to carry a handgun in public for self-defense and other lawful purposes.

21.    Plaintiff Axel Anderson is a natural person, over the age of 18 but under the age of 21, a citizen of Douglas County, Minnesota, and the United States. Plaintiff Anderson has never been charged with nor convicted of any misdemeanor or felony offense. It is his present intention and desire to lawfully carry a handgun in public, including for purposes of self-defense. As a result of Defendants' active enforcement of Minn. Stat. § 624.714 subd. 2(b)(2), however, Plaintiff Anderson is precluded from obtaining a permit and therefore subject to the carry prohibitions specified in Section 624.714 subd. 1a, which bar him from exercising his

7

fundamental right to carry a handgun in public for self-defense and other lawful purposes.

22. Plaintiff Minnesota Gun Owners Caucus ("MGOC") is a 501(c)(4) non-profit organization incorporated under the laws of Minnesota with its principal place of business in Shoreview, Minnesota.  MGOC seeks to protect and promote the right of citizens to keep and bear arms for all lawful purposes.  MGOC serves its members and the public through advocacy, education, elections, legislation, and legal action. MGOC's members reside both within and outside Minnesota. MGOC brings this action on behalf of its 18-20-year-old members in Minnesota, including the named Plaintiffs herein.  MGOC's Minnesota members have been adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

23. Plaintiff Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the Constitutional right to possess firearms, and the consequences of gun control. SAF has over 650,000 members and supporters nationwide, including thousands of members in Minnesota. SAF brings this action on behalf of itself and its 18-20-year-old members in Minnesota, including the named Plaintiffs herein. SAF's members have been adversely and directly harmed

by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

24. Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a 501(c)(4) non-profit organization incorporated under the laws of Delaware with its principal place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights—especially the fundamental, individual Second Amendment right to keep and bear arms—advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's members reside both within and outside Minnesota. FPC brings this action on behalf of its 18-20-year-old members in Minnesota, including the named Plaintiffs herein. FPC's Minnesota members have been adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

25. Defendant John Harrington is sued in his individual capacity and in his official capacity as the Commissioner of the Minnesota Department of Public Safety. As Commissioner, Harrington is charged with "adopt[ing] statewide standards governing the form and contents, as required by . . . [section] 624.714, of every . . . application for a permit to carry a pistol." Minn. Stat. Ann. § 624.7151. Every such application must meet the statewide standards adopted by the commissioner. *Id.*

26. Defendant Don Lorge is sued in his individual capacity and in his official capacity as Sheriff of Mille Lacs County, Minnesota. As Sheriff, Lorge is responsible for

9

administering and enforcing in his County the State's laws, regulations, policies, practices, and customs concerning the carrying of weapons. *See, e.g.*, Minn. Stat. Ann. § 624.714 ("Applications by Minnesota residents for permits to carry shall be made to the county sheriff where the applicant resides.").

27.     Defendant Troy Wolbersen is sued in his individual capacity and in his official capacity as Sheriff of Douglas County, Minnesota. As Sheriff, Wolbersen is responsible for administering and enforcing in his County the State's laws, regulations, policies, practices, and customs concerning the carrying of weapons. *See, e.g.*, Minn. Stat. § 624.714 ("Applications by Minnesota residents for permits to carry shall be made to the county sheriff where the applicant resides.").

28.     Defendant Dan Starry is sued in his individual capacity and in his official capacity as Sheriff of Washington County, Minnesota. As Sheriff, Starry is responsible for administering and enforcing in his County the State's laws, regulations, policies, practices, and customs concerning the carrying of weapons. *See, e.g.*, Minn. Stat. § 624.714 ("Applications by Minnesota residents for permits to carry shall be made to the county sheriff where the applicant resides.").

## JURISDICTION AND VENUE

29.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, which confer

original jurisdiction on federal district courts to hear suits alleging the violation of

rights and privileges under the United States Constitution.

30.    This action for violation of Plaintiffs' constitutional rights is brought under 42

U.S.C. § 1983 and seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§

2201 and 2202, as well as nominal damages pursuant to 42 U.S.C. § 1983 and

attorneys' fees pursuant to 42 U.S.C. § 1988.

31.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part

of the events and omissions giving rise to Plaintiffs' claims occurred in the District

of Minnesota.

## THE LAWS AT ISSUE

32.    Under Minn. Stat. § 624.714 subd. 1a, unless one is a peace officer, it is illegal to

carry, hold, or possess a pistol in a motor vehicle, snowmobile, or boat, or on or

about one's clothes or person, or to otherwise possess or control a pistol in any

public place without first having obtained a permit to carry, with very limited

exceptions.[1] A "pistol" includes any handgun. Minn. Stat. § 624.712 subd. 2. A

"public place" includes any area dedicated for public use, except a public area

---

[1] No permit is necessary to carry a handgun, in the woods or fields, or on the waters, for hunting or fishing, and no permit is necessary to transport a handgun in a motor vehicle, snowmobile or boat, if the handgun is unloaded *and* stored in a closed and fastened container. Minn. Stat. § 624.714 subd. 9(4,5).

dedicated solely for hunting or target shooting, a person's residential dwelling or premises, or a person's place of business. Minn. Stat. § 624.7181 subd. 1(c).

33.  To qualify for Minnesota's permit to carry, a person must: (1) have training in the safe use of a pistol; (2) be at least 21 years of age, and a citizen or permanent resident of the United States; (3) complete an application for a permit; (4) not be prohibited from possessing a firearm under state or federal law; and (5) not be listed in the criminal gang investigative data system under section 299C.091. Minn. Stat. § 624.714 subd. 2, 2a, 3.

34. Thus, the statutory scheme absolutely bars all law-abiding adults 18 to 20 years old from obtaining the permit because all permit holders must be "at least 21 years of age." Minn. Stat. § 624.714 subd. 2(b)(2).

35. A first violation of the State's permitting requirement is a "gross misdemeanor" and each subsequent violation is a felony, either of which results in a fine, incarceration, or both. Minn. Stat. §§ 609.03(1, 2), 624.714 subd. 1a.

## STATEMENT OF FACTS RELATING TO PLAINTIFF WORTH

36. Plaintiff Worth is an 18-year-old resident of Mille Lacs, Minnesota.

37. Plaintiff Worth works part-time as a manager and cashier at a local grocery store.

38. Plaintiff Worth is a responsible citizen not disqualified from exercising her Second Amendment rights.

39. Plaintiff Worth is a member of Plaintiffs MGOC, SAF, and FPC.

40.     As a result of her job, Plaintiff Worth is frequently tasked with closing the grocery store. This requires her to leave the store at approximately 10 p.m. and traverse the dark parking lot to her car, alone. Additionally, Plaintiff Worth often travels alone while in public, to and from work, to and from friends' houses, and to run errands. Based on this general vulnerability and the prevalence of street crime, including sex offenses, in her immediate neighborhood of Milaca, Plaintiff Worth desires to carry a handgun for self-defense.

41.     Plaintiff Worth would lawfully acquire, through a gift, a Beretta 92x handgun to carry outside the home in public if she were able to obtain a carry permit.

42.     However, by and through their active enforcement of Minn. Stat. § 624.714 subd. 2(b)(2), Defendants are precluding Plaintiff Worth from obtaining a permit to carry and therefore subjecting her to the carry prohibitions under Section 624.714 subd. 1a, which criminalize her carrying of a handgun in the lawful exercise of her fundamental Second Amendment rights.

43.     Based on Defendants' active enforcement of M.S.A § 624.714 subd. 1a and 624.714 subd. 2(b)(2), should Plaintiff Worth carry a handgun in public for self-defense or other lawful purposes, she will be subjected to criminal charges, prosecution, and significant penal sanctions, including potentially a permanent loss of her Second Amendment rights.

44.     Thus, although Plaintiff Worth can vote, serve on a jury, hold public office, marry, sign legally binding contracts, join the armed forces, and be held fully accountable before the law for criminal acts to the point of being executed, *see* 18 U.S.C. § 3591,

Defendants' enforcement of 624.714 subd. 2(b)(2) bars Plaintiff Worth from obtaining a permit to carry handguns in public throughout this State under Section 624.714 subd. 1a.

45.    Plaintiff Worth is a responsible, peaceable citizen who is not otherwise disqualified from obtaining a permit and has no history of violent behavior or other conduct that would pose any threat or danger to the public. If the age limit on carry permits were invalidated or otherwise eliminated, Plaintiff Worth would apply for a permit forthwith.

46.    Plaintiff Worth desires to carry a loaded handgun in public in the lawful exercise of her fundamental right to keep and bear arms for her self-defense and other lawful purposes, which under the current statutory regime, requires that she obtain a permit to carry, so that she would be exempt from the prohibitions imposed by Section 624.714.

47.    Plaintiff Worth has abstained from carrying a handgun in public for all lawful purposes including self-defense, based on a real risk and credible fear of arrest, prosecution, monetary sanction, and incarceration pursuant to Minn. Stat. § 624.714, as implemented, enforced, directed, and otherwise propagated by Defendants, should she carry a handgun in public for lawful purposes including self-defense.

48.    Because Plaintiff Worth is a law-abiding citizen and she would face criminal sanction for any attempt to carry a handgun in public in violation of the permitting scheme, Defendants' active enforcement of Minn. Stat. § 624.714 and the related

regulations, policies, practices, and customs designed to implement and enforce the same has forced Plaintiff Worth to refrain from exercising her fundamental right to carry a handgun in public for self-defense and other lawful purposes.

### STATEMENT OF FACTS RELATING TO
### PLAINTIFF DYE

49. Plaintiff Dye is a 19-year-old resident of Washington County, Minnesota.

50. Plaintiff Dye works part-time as a barista and intends to start college in the fall of 2021 to study criminal justice and criminal psychology.

51. Plaintiff Dye is a responsible citizen not disqualified from exercising his Second Amendment rights.

52. Plaintiff Dye is a member of Plaintiffs MGOC, SAF, and FPC.

53. Plaintiff Dye is concerned about a recent increase in violent crime, including civil unrest and political violence, in his immediate neighborhood, as well as in the area of East St. Paul, Minnesota, where he travels monthly to visit his stepfather. Plaintiff Dye desires to carry a handgun outside the home, in public for self-defense, the protection of his family, and other lawful purposes.

54. Plaintiff Dye currently possesses a Smith and Wesson M&P handgun that he received as a gift from his mother.

55. However, by and through their active enforcement of Minn. Stat. § 624.714 subd. 2(b)(2), Defendants are precluding Plaintiff Dye from obtaining a permit to carry and therefore subjecting him to the carry prohibitions under 624.714 subd. 1a, which

criminalize his carrying of a handgun in the lawful exercise of his fundamental Second Amendment rights.

56.     Based on Defendants' active enforcement of M.S.A § 624.714 subd. 1a and 624.714 subd. 2(b)(2), should Dye attempt to carry a handgun in public for self-defense or other lawful purposes, he will be subjected to criminal charges, prosecution, and significant penal sanctions, including potentially a permanent loss of his Second Amendment rights.

57.     Thus, although Plaintiff Dye can vote, serve on a jury, hold public office, marry, sign legally binding contracts, join or be drafted into the armed forces, be called upon for federal and state militia service, and be held fully accountable before the law for criminal acts to the point of being executed, *see* 18 U.S.C. § 3591, Defendants' enforcement of 624.714 subd. 2(b)(2) bars Plaintiff Dye from obtaining a permit to carry a handgun in public and thus bars his right, in total, to lawfully carry handguns in public throughout this State under Section 624.714 subd. 1a.

58.     Plaintiff Dye is a responsible, peaceable citizen who is otherwise not disqualified from obtaining a permit and has no history of violent behavior or other conduct that would pose any threat or danger to the public. If the age limit on carry permits were invalidated or otherwise eliminated, Plaintiff Dye would apply for a permit forthwith.

59.     Plaintiff Dye desires to carry a loaded handgun in public in the lawful exercise of his fundamental right to keep and bear arms for his self-defense and other lawful purposes, which under the current statutory regime, requires that he obtain a permit

to carry, so that he would be exempt from the prohibitions imposed by Section 624.714.

60. Plaintiff Dye has abstained from carrying a handgun in public for all lawful purposes, including self-defense, based on a real risk and credible fear of arrest, prosecution, monetary sanction, and incarceration pursuant to Minn. Stat. § 624.714, as implemented, enforced, directed, and otherwise propagated by Defendants, should Plaintiff Dye carry a handgun in public for lawful purposes including self-defense.

61. Because Plaintiff Dye is a law-abiding citizen and he would face criminal sanction for any attempt to carry a handgun in public in violation of the permitting scheme, Defendants' active enforcement of Minn. Stat. § 624.714 and the related regulations, policies, practices, and customs designed to implement and enforce the same has forced Plaintiff Dye to refrain from exercising his fundamental right to carry a handgun in public for self-defense, defense of others, and other lawful purposes.

### STATEMENT OF FACTS RELATING TO PLAINTIFF ANDERSON

62. Plaintiff Anderson is an 18-year-old resident of Douglas County, Minnesota.

63. Plaintiff Anderson works part-time as a front desk attendant at a local hotel. He typically works overnight shifts, from approximately 11 p.m. to 7 a.m.

64. Plaintiff Anderson is a responsible citizen not disqualified from exercising his Second Amendment rights.

65. Plaintiff Anderson is a member of Plaintiffs MGOC, SAF, and FPC.

66. Plaintiff Anderson must commute to and from his place of employment late at night and/or early in the morning. And the nature of his work itself often leaves Anderson alone in the hotel lobby over the late night and early morning hours. On one occasion, Plaintiff Anderson's girlfriend, who had come to the hotel to visit him, was accosted and chased through the hotel parking lot by a group of unknown aggressors. Plaintiff Anderson desires to carry a handgun outside the home, in public for self-defense, defense of others, including his girlfriend, and other lawful purposes.

67. Plaintiff Anderson would lawfully acquire, through an interfamilial gift from his father, a Beretta model 92A1 handgun to carry outside the home in public if he were able to obtain a carry permit.

68. However, by and through his active enforcement of Minn. Stat. § 624.714 subd. 2(b)(2), Defendants are precluding Plaintiff Anderson from obtaining a permit to carry and therefore subjecting him to the carry prohibitions under Section 624.714 subd. 1a, which criminalize his carrying of a handgun in the lawful exercise of his fundamental Second Amendment rights.

69. Based on Defendants' active enforcement of M.S.A § 624.714 sub. 1a and 624.714 subd. 2(b)(2), should Plaintiff Anderson attempt to carry a handgun in public for self-defense or other lawful purposes, he will be subjected to criminal charges, prosecution, and significant penal sanctions, including potentially a permanent loss of his Second Amendment rights.

70. Thus, although Plaintiff Anderson can vote, serve on a jury, hold public office, marry, sign legally binding contracts, join or be drafted into the armed forces, or be called upon for federal and state militia service, and be held fully accountable before the law for criminal acts to the point of being executed, *see* 18 U.S.C. § 3591, Defendants' enforcement of 624.714 subd. 2(b)(2) bars Plaintiff Anderson from obtaining a permit to carry handguns in public throughout this State under Section 624.714 subd. 1a.

71. Plaintiff Anderson is a responsible, peaceable citizen who is not otherwise disqualified from obtaining a permit and has no history of violent behavior or other conduct that would pose any threat or danger to the public. If the age limit on carry permits were invalidated or otherwise eliminated, Plaintiff Anderson would apply for a permit forthwith.

72. Plaintiff Anderson desires to carry a loaded handgun in public in the lawful exercise of his fundamental right to keep and bear arms for his self-defense and other lawful purposes, which under the current statutory regime, requires that he obtain a permit to carry, so that he would be exempt from the prohibitions imposed by Section 624.714.

73. Plaintiff Anderson has abstained from carrying a handgun in public for all lawful purposes including self-defense, based on a real risk and credible fear of arrest, prosecution, monetary sanction, and incarceration pursuant to Minn. Stat. § 624.714, as implemented, enforced, directed, and otherwise propagated by

19

Defendants, should Plaintiff Anderson carry a handgun in public for lawful purposes including self-defense.

74. Because Plaintiff Anderson is a law-abiding citizen and he would face criminal sanction for any attempt to carry a handgun in public in violation of the permitting scheme, Defendants' active enforcement of Minn. Stat. § 624.714 and the related regulations, policies, practices, and customs designed to implement and enforce the same has forced Plaintiff Anderson to refrain from exercising his fundamental right to carry a handgun in public for self-defense, defense of others, and other lawful purposes.

## HISTORY AND EFFECTS OF PUBLIC CARRY

75. On May 8, 1792, mere months after ratification of the Second Amendment, Congress mandated that "every free able-bodied white male citizen . . . *who is or shall be of the age of eighteen years*, and under the age of forty-five years (except as is herein after excepted) shall severally and respectively be enrolled in the militia." 1 Stat. 271 ("Militia Act") (emphasis added).

76. In the individual States, males aged 18 were enrolled.

77. Individuals within Plaintiffs' 18-20-year-old age group pose a lesser risk of perpetrating violent crime compared to their older counterparts. For example,18-to-20-year-olds were arrested for 41,250 violent crimes in 2019, compared to 58,850 violent-crime arrests for 21-to-24-year-olds, Off. of Juvenile Justice & Delinquency

Programs, *Estimated number of arrests by offense and age group, 2019, Gender: All*, U.S. Dep't of Just. (Nov. 16, 2020), https://bit.ly/3eOU8Gl.

78.    Only 320.8 out of every 100,000 18-to-20-year-olds were arrested for violent crimes in 2019, compared to 338.9 out of every 100,000 21-to-24-year-olds. Off. of Juvenile Justice & Delinquency Programs, *Arrest Rates by offense and age group, Gender: All*, U.S. Dep't of Just. (Nov. 16, 2020), https://bit.ly/3gWR4KP.

79.    Female individuals within the 18-to-20 age group pose a minimal risk of perpetrating violent crime of any kind compared to their male counterparts.

80.    In 2019, 18-20-year-old women were arrested for fewer than one-twelfth as many murders and nonnegligent manslaughters as 21-24-year-old men. *Compare Estimated number of arrests by offense and age group, 2019, Gender: Males*, Law Enforcement & Juvenile Crime, supra, https://bit.ly/3reYudS (1,620 homicides or negligent manslaughters); *with id.*, *Gender: Females*, https://bit.ly/3fcZwoF (120 murders or nonnegligent manslaughters). Overall, 21-24-year-old men are roughly four times likelier than 18-20-year-old women to be arrested for a violent crime of any sort. *Compare Arrest rates by offense and age group: 2019, Gender: Males*, Law Enforcement & Juvenile Crime, supra, https://bit.ly/31yvZ0h (0.51 percent of 21-24-year-old men arrested for violent crimes in 2019); *with Arrest rates by offense*

*and age group: 2019, Gender: Females*, *id.*, https://bit.ly/3mbxA65 (0.13 percent of 18-20-year-old women arrested for violent crimes in 2019).

81.    Female individuals within this age group pose a relatively minimal risk of perpetrating violent crime of any kind compared to their male counterparts.

82.    In 2019, 18-20-year-old women were arrested for fewer than one-twelfth as many murders and nonnegligent manslaughters as 21-24-year-old men. *Compare Estimated number of arrests by offense and age group, 2019, Gender: Males*, Law Enforcement & Juvenile Crime, *supra*, https://bit.ly/3reYudS (1,620 homicides or negligent manslaughters); *with id.*, *Gender: Females*, https://bit.ly/3fcZwoF (120 murders or nonnegligent manslaughters). Overall, 21-24-year-old men are roughly four times likelier than 18-20-year-old women to be arrested for a violent crime of any sort. *Compare Arrest rates by offense and age group: 2019, Gender: Males*, Law Enforcement & Juvenile Crime, *supra*, https://bit.ly/31yvZ0h (.51 percent of 21-24-year-old men arrested for violent crimes in 2019); *with Arrest rates by offense and age group: 2019, Gender: Females*, *id.*, https://bit.ly/3mbxA65 (.13 percent of 18-20-year-old women arrested for violent crimes in 2019).

83.     In 2018, women perpetrated only 17.6 percent of violent incidents, whereas men perpetrated 86.3 percent,[2] and women were victims of 57.7 percent of violent incidents. *Criminal Victimization, 2018 – Supplemental Tables*, Bureau of Just.

---

[2] Only female offenders committed 13.7 percent of violent incidents; only male offenders committed 82.4 percent; both male and female offenders committed 3.9 percent. *Id.*

Stats., Off. of Just. Progs., U.S. Dep't of Just. 1 tbl. 12a. (July 2020), https://bit.ly/3lJ8ISA.

## COUNT I: MINN. STAT. §§ 624.714 subd. 1a AND 624.714 subd. 2(b)(2) ARE UNCONSTITUTIONAL FACIALLY AND AS APPLIED UNDER THE SECOND AND FOURTEENTH AMENDMENTS
### (All Plaintiffs v. Defendants)

84.    The foregoing paragraphs are hereby incorporated herein as if set forth in full.

85.    The Second Amendment of the United States Constitution provides that "the right of the people to keep and bear arms shall not be infringed."

86.    The Supreme Court has held that the right to keep and bear arms, for self-defense and other lawful purposes, is a fundamental right. *Heller*, 554 U.S. at 581.

87.    In *Heller*, the U.S. Supreme Court defined "bear arms" as to "wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." 554 U.S. at 584.

88.    In *McDonald*, the Supreme Court held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment. 561 U.S. at 791; *id.* at 806 (Thomas, J., concurring in the judgment).

89.    42 U.S.C. § 1983 prohibits state actors from depriving a person of a federal constitutional rights under color of state law.

90.    Plaintiffs Worth, Dye, and Anderson, along with other similarly situated 18-to-20-year-old members of SAF, FPC and MGOC in Minnesota, are law-abiding, peaceable citizens of Minnesota and the United States who desire to lawfully own,

possess, and utilize firearms, and to carry handguns on public streets and public property throughout this State without being subjected to criminal prosecution simply because they are ineligible for any license to carry a handgun.

91.   Defendants have violated the right of Plaintiffs and all other similarly situated members of SAF, FPC and MGOC to keep and bear arms by and through their enforcement of Minn. Stat. § 624.714 subd. 1a, Minn. Stat. § 624.714 subd. 2(b)(2), and the related regulations, policies, practices, and customs preventing them from carrying a handgun on the public streets and public property—even for purposes of self-defense—in the lawful exercise of their fundamental right to do so.

92.   Defendants' enforcement of Sections 624.714 subd. 1a and 624.714 subd. 2(b)(2) and the related regulations, policies, practices, and customs is an infringement and an impermissible burden on the right of Plaintiffs, and all other similarly situated members of SAF, FPC and MGOC, to keep and bear arms pursuant to the Second and Fourteenth Amendments, especially in light of the fact that it prevents all such individuals from lawfully "wear[ing], bear[ing], or carry[ing a firearm] . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 554 U.S. at 584.

93.   Even if Minnesota's ban were subject to means-end scrutiny, prohibiting 18-to-20-year-old adults from carrying handguns does not substantially advance a government interest in public safety. That is because available data show that 18-to-20-year-old adults commit *fewer* violent crimes than those who are 21-to-24-

24

years-old. *See* Off. of Juvenile Justice & Delinquency Programs, *Estimated number of arrests by offense and age group, 2019, Gender: All*, U.S. Dep't of Just. (Nov. 16, 2020) (showing that 18-to-20-year-olds were arrested for 41,250 violent crimes in 2019, compared to 58,850 violent-crime arrests for 21-to-24-year-olds), https://bit.ly/3eOU8Gl; Off. of Juvenile Justice & Delinquency Programs, *Arrest Rates by offense and age group, Gender: All*, U.S. Dep't of Just. (Nov. 16, 2020) (showing that 320.8 out of every 100,000 18-to-20-year-olds were arrested for violent crimes in 2019, compared to 338.9 out of every 100,000 21-to-24-year-olds). https://bit.ly/3gWR4KP. Because 18-to-20-year-old adults pose a lesser threat to public safety than individuals who are only marginally older than them, Minnesota's prohibition on 18-to-20-year-olds carrying handguns cannot withstand any potentially applicable level of constitutional scrutiny.

94.    Defendants' current enforcement of the laws and related regulations, customs, practices, and policies challenged herein forces Plaintiffs and all other similarly situated members of SAF, FPC and MGOC either to comply with the unconstitutional mandate—thereby being prevented from defending themselves and their loved ones in public places—or to be subjected to criminal prosecution.

95.    Therefore, as a direct and proximate result of the above infringement and impermissible burden on the right of Plaintiffs and all other similarly situated members of SAF, FPC and MGOC under the Second and Fourteenth Amendments, Plaintiffs and all other similarly situated members of SAF, FPC and MGOC have

suffered—and continue to suffer—an unlawful deprivation of their fundamental constitutional right to keep and bear arms.

### COUNT II: MINN STAT. §§ 624.714 subd. 1a AND 624.714 subd. 2(b)(2) ARE UNCONSTITUTIONAL AS APPLIED TO 18-TO-20-YEAR-OLD WOMEN UNDER THE SECOND AND FOURTEENTH AMENDMENTS
(*Kristin Worth, FPC, SAF, MGOC v. Defendants*)

96.  The foregoing paragraphs are hereby incorporated herein as if set forth in full.

97.  As detailed above, Minn. Stat. §§ 624.714 subd. 1a and 624.714 subd. 2(b)(2) ban law-abiding adults between the ages of 18 and 21 from carrying handguns in public.

98.  Even if constitutional on its face, this ban violates the Second Amendment rights of Plaintiff Worth and all other similarly situated female members of FPC, SAF and MGOC between the ages of 18 and 21 in Minnesota.

99.  Female individuals within this age group pose a relatively minimal risk of perpetrating violent crime of any kind compared to their male counterparts. In 2019, 18-20-year-old women were arrested for *fewer than one-twelfth* as many murders and nonnegligent manslaughters as 21-24-year-old men. *Compare Estimated number of arrests by offense and age group, 2019, Gender: Males*, Law Enforcement & Juvenile Crime, *supra*, https://bit.ly/3reYudS (1,620 homicides or negligent manslaughters); *with id.*, *Gender: Females*, https://bit.ly/3fcZwoF (120 murders or nonnegligent manslaughters). Overall, 21-24-year-old men are roughly *four times likelier* than 18-20-year-old women to be arrested for a violent crime of any sort. *Compare Arrest rates by offense and age group: 2019, Gender: Males*, Law Enforcement & Juvenile Crime, *supra*, https://bit.ly/31yvZ0h (0.51 percent of

21-24-year-old men arrested for violent crimes in 2019); *with Arrest rates by offense and age group: 2019, Gender: Females*, *id.*, https://bit.ly/3mbxA65 (0.13 percent of 18-20-year-old women arrested for violent crimes in 2019).

100.  In 2018, women perpetrated only 17.6 percent of violent incidents, whereas men perpetrated 86.3 percent,[3] and women were victims of 57.7 percent of violent incidents. *Criminal Victimization, 2018*, *supra*, at 1 tbl. 12a.

101.  Only *0.13 percent* of 18-to-20-year-old women were arrested for *any violent crime* at all in 2019, *see Arrest rates by offense and age group, 2019, Gender: Females*, Law Enforcement & Juvenile Crime, *supra*, https://bit.ly/3173Kph. In 2018, the rate was 0.15 percent, *see Arrest rates by offense and age group, 2018, Gender: Females*, *id.*, https://bit.ly/2ORyCb9, and in 2017, it was 0.15 percent, *see Arrest rates by offense and age group, 2017, Gender: Females*, *id.*, https://bit.ly/3cdULsP. The near-total majority 18-to-20-year-old women pose no threat to public safety.

102.  The State has not provided and cannot provide any legitimate justification for denying law-abiding, 18-to-20-year-old women the right to lawfully exercise their fundamental right to carry handguns in public for self-defense and other lawful purposes.

103.  Without any legitimate justification, much less one of a "compelling" or "substantial" nature as required to survive heightened scrutiny, to the extent a

---

[3] Only female offenders committed 13.7 percent of violent incidents; only male offenders committed 82.4 percent; both male and female offenders committed 3.9 percent. *Criminal Victimization, 2018 – Supplemental Tables*, Bureau of Just. Stats., Off. of Just. Progs., U.S. Dep't of Just. 1 tbl. 12a. (July 2020), https://bit.ly/3lJ8ISA.

scrutiny analysis applies, Minnesota's ban is unconstitutional, void, and invalid as applied to women between the ages of 18 and 21. Defendants' active enforcement of it constitutes an actionable violation of 42 U.S.C. § 1983 redressable through the relief Plaintiffs seek in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, as follows:

a) Declare that Minn. Stat. § 624.714 subd. 1a and § 624.714 subd. 2(b)(2), their derivative regulations, and all related laws, policies, practices, and customs violate—facially, as applied to otherwise qualified 18-20-year-olds, or as applied to otherwise qualified 18-20-year-old women—the right of Plaintiffs and Plaintiffs' similarly situated members to keep and bear arms as guaranteed by the Second Amendment and Fourteenth Amendments to the United States Constitution;

b) Enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with him from enforcing, against Plaintiffs and Plaintiffs' similarly situated members Minn. Stat., § 624.714 subd. 1a and § 624.714 subd. 2(b)(2), their derivative regulations, and all related laws, policies, practices, and customs that would impede or criminalize Plaintiffs and Plaintiffs' similarly situated members' exercise of their right to keep and bear arms;

c) Award Plaintiffs nominal damages for constitutional injuries caused by Defendants' enforcement of the Minnesota ban and resulting deprivation of Plaintiffs' Second and Fourteenth Amendment rights;

28

d)   Pursuant to 42 U.S.C. § 1988, award costs and attorney fees and expenses to the

extent permitted; and

e)   Grant any and all other equitable and/or legal remedies this Court may see fit.


Dated: June 7, 2021

Respectfully Submitted,

/s/Blair W. Nelson_____
Blair W. Nelson
Minnesota Bar No. 027309

BLAIR W. NELSON, LTD.
205 7th Street N.W. Suite 3
Bemidji, MN 56601
(218) 444-4531
bwnelson@paulbunyan.net

David H. Thompson*
Peter A. Patterson*
William V. Bergstrom*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

*Pro hac vice application
forthcoming

Attorneys for Plaintiffs