UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Kristin Worth, Austin Dye, Axel Anderson, Minnesota Gun Owners Caucus, Second Amendment Foundation, Firearms Policy Coalition, Inc., <br><br>  Plaintiffs, <br><br> v. <br><br> John Harrington, in his individual capacity and in his official capacity as Commissioner of the Minnesota Department of Public Safety, Don Lorge, in his official capacity as Sheriff of Mille Lacs County, Minnesota, Troy Wolbersen, in his official capacity as Sheriff of Douglas County, Minnesota, and Dan Starry, in his official capacity as Sheriff of Washington County, Minnesota, <br><br>  Defendants. | Case No. 21-cv-01348-KMM/LIB <br><br><br> **DEFENDANTS DON LORGE, TROY WOLBERSEN, AND DAN STARRY'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

---

## INTRODUCTION

In their Civil Rights Complaint brought under 42 U.S.C. § 1983 (ECF Doc. 1) ("Complaint"), Plaintiffs assert constitutional claims against Mille Lacs County Sheriff Don Lorge, Douglas County Sheriff Troy Wolbersen, and Washington County Sheriff Dan Starry ("County Sheriffs") based on nothing more than Plaintiffs' belief that an age restriction set by the state legislature in Minnesota Statutes Section 624.714 violates their Second Amendment Rights. It is undisputed that the County Sheriffs had no role in

1

developing the statute or the challenged age restriction; have no say or discretion in its enforcement; and, in fact, have never enforced the challenged age restrictions by denying a permit to anyone, much less one of the individual Plaintiffs, on the basis of age. Because Plaintiffs have failed to identify any policy of the County Sheriffs or their Counties that is the moving force behind the alleged violation of their Second Amendment rights, their § 1983 claims against the County Sheriffs fail under *Monell*. As set forth in Defendant Harrington's memorandum in support of his motion for summary judgment, Plaintiffs' claims that the age restriction in Section 624.714 violates the Second Amendment also fail as a general matter. The County Sheriffs now seek summary judgment on these bases.

**UNDISPUTED FACTS**

The controversy in this case centers on Minnesota Statutes Section 624.714, which sets forth the permitting requirements and other procedures related to members of the general public carrying pistols in a public place. In enacting this statute, the Minnesota legislature tasked county sheriffs with administering the permitting process, laying out strict parameters for doing so. The statute prescribes precisely what circumstances qualify an individual for a permit to carry a pistol ("permit") and, when such circumstances are met, requires a sheriff to grant the permit application unless "there exists a substantial likelihood that the applicant is a danger to self or the public if" issued a permit. Minn. Stat. § 624.714, subd. 6(a)(3). In administering the permitting process prescribed by Section 624.714, sheriffs are told exactly what application form they must accept, how to conduct a background investigation on applicants, what safety training they must accept

to satisfy the permit criteria, how much time they have to complete the permitting process, whether they must or must not issue a requested permit, and even how to manage data collected under this statute. *See id.*, subds. 2a(e), 3(a), 4, 6, and 14.

Specific to this case, this state law lays out the criteria applicants must meet to qualify for a permit and requires a sheriff to issue a permit if the applicant meets those criteria[1] and to deny the requested permit if the applicant does not. *See id.*, subds. 2(b), 6(a)(2). The language of this state law is quite clear that county sheriffs and their county employers are just cogs in the wheel that is this gun permitting scheme. Leaving no room for doubt, the legislature included an "exclusivity" provision that states as follows:

> This section sets forth the complete and exclusive criteria and procedures for the issuance of permits to carry and establishes their nature and scope. No sheriff, police chief, governmental unit, government official, government employee, or other person or body acting under color of law or governmental authority may change, modify, or supplement these criteria or procedures, or limit the exercise of a permit to carry.

*Id.*, subd. 23. Consistent with this mandate, the County Sheriffs and their respective County employers do not maintain any ordinances, policies, practices, or procedures on the possession of pistols or permits to carry them in public. Declaration of Defendant Dan Starry ("Starry Decl."), ¶ 4; Declaration of Defendant Don Lorge ("Lorge Decl."), ¶ 4; Declaration of Defendant Troy Wolbersen ("Wolbersen Decl."), ¶ 4.

---

[1] As recognized by the Supreme Court in *New York State Rifle & Pistol Association v. Bruen*, Minnesota is one of the 43 "shall issue" jurisdictions in the United States. 142 S. Ct. 2111, 2124 (2022).

Plaintiffs are challenging one specific provision of Section 624.714 – the one that prohibits individuals between the ages of 18 and 20 from obtaining a permit. Specifically, to qualify for a permit under Section 624.714, the applicant must be "at least 21 years old." *Id.*, subd. 2(b)(2); *see also id.*, subd. 6(a)(2) (stating that the sheriff "must…deny the application for a permit to carry solely on the grounds that the applicant failed to qualify under the criteria described in subdivision 2, paragraph (b)).

Based on the age restriction set out by the legislature in Section 624.714, Plaintiffs have brought claims pursuant to 42 U.S.C. § 1983 against the Defendants, alleging that this state law violates their rights under the Second Amendment to the U.S. Constitution. Individual Plaintiffs Kristin Worth, Austin Dye, and Axel Anderson ("individual Plaintiffs") are between the ages of 18 and 20, and the remaining Plaintiffs are gun-rights organizations with members in Minnesota in this same age range. Compl. ¶¶ 22-24. Plaintiff Worth resides in Mille Lacs County, which is where Defendant Don Lorge serves as Sheriff. Compl. ¶ 19; Lorge Decl., ¶ 6. Plaintiff Dye resides in Washington County, where Defendant Dan Starry serves as Sheriff. Compl. ¶ 20; Starry Decl., ¶ 6. Plaintiff Anderson resides in Douglas County, where Defendant Troy Wolbersen serves as Sheriff. Compl. ¶ 21; Wolbersen Decl., ¶ 6.

While the individual Plaintiffs have expressed a generalized interest in obtaining a permit under Section 624.714, none of them has ever applied for such a permit to their respective County Sheriff. Compl. ¶¶ 19-21; Declaration of Kristin C. Nierengarten ("Nierengarten Decl."), Exs. 1, 2, and 3, at Responses to Requests No. 1 and 2. As such, the Defendant County Sheriffs have never received or considered a permit application

4

under Section 624.714 from the individual Plaintiff living in their respective County nor denied them such a permit on the basis of age. Starry Decl., ¶ 6; Lorge Decl., ¶ 6; Wolbersen Decl., ¶ 6. In fact, none of the Defendant County Sheriffs has ever received an application for a permit under Section 624.714 from any individual between the ages of 18 and 20 or denied a permit based on the applicant's age. Starry Decl., ¶ 7; Lorge Decl., ¶ 7; Wolbersen Decl., ¶ 7.

Nonetheless, in bringing two § 1983 claims against the County Sheriffs[2] to challenge the constitutionality of the age restrictions in Section 624.714 – one that challenges the age restriction generally and the other that challenges it specific to women – , Plaintiffs seek injunctive relief against the County Sheriffs, in addition to damages for alleged "constitutional injuries" and costs and expenses, including attorney fees, under 42 U.S.C. § 1988. At the same time, Plaintiffs acknowledge that their claims against the County Sheriffs are predicated entirely on the existence of Section 624.714, centering on "legislative" facts, not "facts concerning the conduct" of the County Sheriffs. Nierengarten Decl., Exs. 4, 5, & 6, at Responses to Interrog. Nos. 1, 2, 12, & 18.

The County Sheriffs now move for summary judgment, seeking dismissal of Plaintiffs' claims against them in their entirety.

---

[2] Plaintiffs originally pled their claims against the County Sheriffs in both their individual and official capacities. *See* Compl. ¶¶ 26-28. The Court dismissed the claims, with prejudice, as stated against the County Sheriffs in their individual capacities by an order dated November 19, 2021. *See* ECF Doc. 30. As such, only the official-capacity claims remain.

# ARGUMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, "summary judgment is appropriate where, viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 953 (8th Cir. 2012). Summary judgment must be granted if the moving party is entitled to judgment as a matter of law and a reasonable fact finder could not disagree with respect to any factual issues that may exist. Fed. R. Civ. P. 56(a); *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The County Sheriffs' burden in this motion is satisfied by informing the court why summary judgment is appropriate and identifying those portions of the pleadings, discovery, and affidavits, if any, that indicate Plaintiffs cannot support a central element of their claims. *Celotex Corp. v. Catrell*, 477 U.S. 317, 323 (1986).

Because no genuine issues of material fact exist, the County Sheriffs are entitled to judgment as a matter of law on Plaintiffs' claims.

I. **BECAUSE PLAINTIFFS HAVE NOT SATISFIED THE REQUIREMENTS OF *MONELL* TO SUPPORT THEIR § 1983 CLAIMS, THE COUNTY SHERIFFS ARE ENTITLED TO SUMMARY JUDGMENT.**

Plaintiffs assert their § 1983 claims against the County Sheriffs in their official capacities only. Official-capacity suits are "another way of pleading an action against an entity that employs an officer." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)); *see also Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("[O]fficers sued for damages in their

6

official capacity … assume the identity of the government that employs them.") (citation omitted). Here, that entity is each respective county where a named County Sheriff serves – Mille Lacs, Douglas, and Washington. *See* Minn. Stat. §§ 382.01 (designating the sheriff as a county "officer"); 387.03 & .04 (enumerating duties that each county sheriff owes its county).

"[A] municipality cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691. Rather, to prevail on their official-capacity claim against the County Sheriffs, Plaintiffs must show that the Counties themselves "caused the constitutional violation at issue." *Elder–Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (quotation omitted). "Thus, [the] first inquiry … is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36-37 (2010) (holding that *Monell*'s policy or custom requirement applies equally in § 1983 cases seeking equitable relief only).

To prove the existence of a municipal policy to satisfy *Monell*, plaintiffs must point to "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("[O]nly those with final policymaking authority may by their actions subject a government to § 1983 liability" (internal quotation marks omitted)). Further, plaintiffs must "demonstrate that the policy itself is unconstitutional," *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 395 (8th Cir. 2007), and that the policy is the "moving force" behind

7

the violation of their constitutional rights. *Mettler*, 165 F.3d at 1204 (quoting *Monell*, 436 U.S. at 694).[3]

As such, to support a claim against the Counties here, Plaintiffs must establish facts showing that (1) each County has an unconstitutional policy, of which (2) the County Sheriff is the policymaker, and that (3) is the "moving force" behind the alleged violation of their Second Amendment rights. They have not – and cannot – establish such facts.

### A. Plaintiffs' § 1983 claims against the County Sheriffs fail under *Monell* for want of an allegedly unconstitutional County policy.

As a threshold matter, Plaintiffs have not identified a policy of any of the County Defendants that they allege is unconstitutional or the "moving force" behind the alleged violation of their Second Amendment rights. They have not even alleged that any such County policy exists or that the County Sheriffs, acting in their role as County officials, engaged in policymaking that resulted in their alleged constitutional injury. *See, generally*, Compl.; Nierengarten Decl., Exs. 4, 5, & 6. In fact, they acknowledge having no particular concern about the County Sheriffs' conduct and maintain that their ire is directed at the challenged statutory provision. Nierengarten Decl., Exs. 4, 5, & 6, at Responses to Interrog. Nos. 1, 2, 12, & 18.

---

[3] The County Sheriffs focus on the "policy" portion of the *Monell* requirements as Plaintiffs' arguments center on a specific policy set forth in Section 624.714: not to issue permits to 18 to 20 year-olds. Moreover, a "custody" for *Monell* purposes looks for a pattern of unconstitutional misconduct attributable to a municipal entity. *See Mettler*, 165 F.3d at 1204. Such analysis is inapplicable here, since Plaintiffs concede that the conduct of the County Sheriffs is not at issue. *See* Nierengarten Decl., Exs. 4, 5, & 6, at Responses to Interrog. Nos. 1, 2, 12, & 18. Even still, as explained herein, a municipality's compliance with a state-imposed mandate is insufficient to satisfy the requirements in *Monell* for § 1983 liability.

The undisputed facts in this case are that the County Sheriffs and their respective County employers do not have any policy related to the type of gun permits at issue here, much less a policy that sets any sort of age restriction on such permits. In fact, state law specifically prohibits them from having any such policy. *See* Minn. Stat. § 624.714, subd. 23. This alone is sufficient to order summary judgment and dismiss the claims against the County Sheriffs on the basis that Plaintiffs have failed to meet the requirements of *Monell* to impose liability under § 1983 on the County Defendants. *See, e.g.*, *Calhoun v. Washington Cnty. Cmty. Servs. Child Support Unit*, No. 18-CV-1881 (ECT/HB), 2019 WL 2079834, at *5 (D. Minn. Apr. 23, 2019) (recommending dismissal of a Fourteenth Amendment claim where plaintiff did not identify a municipal policy or custom that caused his alleged constitutional injuries), *adopted by* 2019 WL 2075870 (D. Minn. May 10, 2019); *Udoh v. Minnesota Dep't of Human Servs.*, No. 16-CV-3119 (PJS/SER), 2017 WL 9249426, at *7 (D. Minn. July 26, 2017) (dismissing *Monell* claim challenging constitutionality of state law, where plaintiffs failed to allege a municipal policy that violated their due process rights), *adopted by* 2017 WL 4005606 (D. Minn. Sept. 12, 2017), *aff'd* 735 Fed. App'x. 906 (8th Cir. 2018) (per curiam memorandum); *see generally Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused a constitutional deprivation).

### B. The County Sheriffs' statutory mandate to administer permits under § 624.714 is not a municipal policy for *Monell* purposes.

Instead of identifying any County policy underlying their alleged constitutional injury, Plaintiffs seek to impose § 1983 liability on the Counties based on state law alone. In other words, they seek to hold the Counties constitutionally liable because the state requires the County Sheriffs to accept applications and grant permits in accordance with Section 624.714. This means Plaintiffs seek to hold each County liable – both for injunctive and monetary relief – based only on the County Sheriffs' ministerial function under a statute that Plaintiffs believe is unconstitutional, yet over which the County Sheriffs have absolutely no control. To the extent this court is willing to entertain whether this state law can be imputed to the Counties for *Monell* purposes given Plaintiffs' failure to otherwise identify County policies allegedly underlying their § 1983 claims against the County Sheriffs, as set forth below, the Court should properly reject any such argument.

Neither the U.S. Supreme Court nor the Eighth Circuit has directly decided whether a municipality, like each County here, can be liable under *Monell* based solely on its employee's act of enforcing an allegedly unconstitutional state law. *See Slaven v. Engstrom*, 710 F.3d 772, 781 n. 4 (8th Cir. 2013) ("Whether, and if so when, a municipality may be liable under § 1983 for its enforcement of a state law has been the subject of extensive debate in the circuits.") (citing *Vives v. City of New York*, 524 F.3d 346, 351-53 (2d Cir. 2008)); *Duhe v. City of Little Rock*, 902 F.3d 858, 863 n. 2 (8th Cir. 2018) (calling this "a thorny issue"). But the Supreme Court has been quite clear that

"*Monell* is a case about responsibility," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478, 106 S. Ct. 1292, 1297, (1986), and there can be no doubt that responsibility for any alleged constitutional harm resulting from Section 624.714 does not fall on the County Sheriffs.

While *Monell* itself is specifically about the imposition of vicarious liability on municipal bodies in their role as an employer of a constitutional tortfeasor, the core tenet of *Monell* and its progeny is that municipalities should be held liable for only their own acts. Stated another way, *Monell* is meant to prevent municipalities from bearing responsibility for controlling the conduct or decisionmaking of others. *Id.* To constitute a "policy" for *Monell* purposes, the Court has stated that "'policy' generally implies a course of action consciously chosen from among various alternatives" and requires that the municipal policy itself have caused the alleged constitutional violation, rather than the alleged constitutional violation simply being the result of a general and otherwise constitutional "policy." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985). The Court reiterated this position in *Pembaur*, holding "municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483. The Court has been quite clear that, "at the least," the requirements of *Monell* are "intended to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal decisionmakers." *Tuttle*, 471 U.S. at 821.

In this case, it was not a County policy that has allegedly violated the Plaintiffs' Second Amendment rights, but rather state law. The County Sheriffs are not in a position to choose whether or how to follow this state gun permitting law, but rather their course of required action is entirely prescribed by the state in Section 624.714. This state law itself prohibits them from deviating from that course in any way. This is the antithesis of "deliberate" or "conscious" choice and unequivocally establishes that the County Sheriffs are not "officials responsible for establishing final policy with respect" to the challenged permitting scheme. As such, the U.S. Supreme Court instructs that there can be no finding of a County policy or custom in these circumstances as required to satisfy *Monell* and liability under § 1983 does not attach to the County Sheriffs.

Consistent with this, several Circuits agree that the County Sheriffs' mandatory ministerial role under Section 624.714, without more, is not a municipal policy for *Monell* purposes. For example, in *Familias Unidas v. Briscoe*, the Fifth Circuit considered a challenge to a Texas statute authorizing county judges to demand public disclosure of organizations' memberships on the basis that this law violated First Amendment free association rights. 619 F.2d 391, 394-96 (5th Cir. 1980). The plaintiff in that case sued a county judge, in the judge's official capacity, who applied this law to the plaintiff and asked the court to declare the law facially unconstitutional. *Id.* The Fifth Circuit found that the plaintiff had not satisfied the requirements of *Monell* to hold the county liable for the county judge's application of the disclosure statute. *Id.* at 404. In reaching this conclusion, the court explained that the judge's duty to implement the challenged statute, "much like that of a county sheriff in enforcing state law, may more

12

fairly be characterized as the effectuation of the policy of the State of Texas embodied in that statute" and was not attributable to the county. *Id.*

Similarly, in *Surplus Store & Exchange, Inc. v. City of Delphi*, the Seventh Circuit was faced with a claim by a pawn shop alleging that a city police officer violated its constitutional right to due process by seizing rings pursuant to Indiana statutes without first holding a hearing. 928 F.2d 788, 790 (7th Cir. 1991). In an attempt to comply with the requirements of *Monell*, the pawn shop argued that the city's "decision simply to enforce" the allegedly unconstitutional state statutes constituted a municipal policy causing its constitutional injury. *Id.* at 791. Consistent with the Supreme Court's discussions in *Tuttle* and *Pembaur*, the Seventh Circuit rejected this argument out of hand, explaining:

> It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the "policy" of enforcing state law. If the language and standards from *Monell* are not to become a dead letter, such a "policy" simply cannot be sufficient to ground liability against a municipality.

*Id.* at 791-92. The court further rejected the argument that a city has adopted state law, thereby establishing a policy, by not simply ignoring the law, explaining this "would allow municipalities to be nothing more than convenient receptacles of liability for violations caused entirely by state actors – here, the [state] legislature." *Id.* at 791 n. 4. Instead, the court stated that to hold the city liable under § 1983, a policy or custom actually attributable to the city had to have caused the violation, meaning the fault for the

13

constitutional deprivation had to lie with the city itself, not an employee or a state statute. *Id.* at 793.

Piggybacking off of this, in *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, the Seventh Circuit refused to subject a county to § 1983 liability for following state law, explaining that "[w]hen the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury." 154 F.3d 716, 718 (7th Cir. 1998). It explained that this position "has the virtue of minimizing the occasions on which federal constitutional law, enforced through section 1983, puts local government at war with state government." *Id.*

The Fourth and Tenth Circuits have also reached the conclusion that a municipality's compliance with a state-established policy is insufficient to satisfy *Monell* to establish § 1983 liability against the municipality. In *Brockes v. Fields*, the Fourth Circuit held that a county social services board did not act in a policy-making capacity when it fired the plaintiff in accordance with a comprehensive personnel handbook issued by the state social services board that county boards were required to follow. 999 F.2d 788, 791 (4th Cir. 1993). The court reasoned that even though the county board "enjoyed its discretion" to terminate the employee, it did so "at the prerogative of and within the constraints imposed by" the state and "[s]uch bounded, state-conferred discretion" did not constitute policymaking authority sufficient to confer liability under § 1983. *Id.* The Tenth Circuit similarly "emphasize[d]" that a municipal board cannot be liable under § 1983 "for merely implementing a policy created by the state," but rather must be "the

14

moving force" behind the action allegedly causing a constitutional injury. *Whitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000).

In addressing this question of whether state law can by imputed to a municipality for purposes of § 1983 liability, the Second Circuit provided an analysis of how its sister circuits had addressed this question. *See Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008). In doing so, it aptly noted that "all circuits" that have addressed § 1983 liability in the context of "state laws mandating enforcement by municipal police officers" have concluded "that a municipality's decision to honor this obligation is not a conscious choice" sufficient to satisfy *Monell*. *Id.* at 353. The Second Circuit agreed with this conclusion, explaining that even a municipal directive to enforce state law does not amount to a conscious choice to enforce a particular allegedly unconstitutional statute. *Id.* The court explained that other circuits – namely the Sixth, Ninth, and Eleventh – had addressed this issue differently, but the distinction in those cases rested on the fact that the municipality had allegedly "gone beyond merely enforcing the state statute." *Id.* at 351; *accord Garner v. Memphis Police Dep't*, 8 F.3d 358, 364-65 (6th Cir. 1993) (finding *Monell* policy where city policymakers made a deliberate choice to allow the use of deadly force and identify circumstances warranting such use, because the use of force, while authorized, was not required under state law); *Cooper v. Dillon*, 403 F.3d 1208, 1221-23 (11th Cir. 2005) (finding *Monell* policy where municipality enacted an ordinance prohibiting all crimes proscribed by state law and took action to enforce an unconstitutional law under this ordinance where enforcement was not required under state law); *Evers v. Custer County*, 745 F.2d 1196, 1198 (9th Cir. 1984) (finding *Monell*

policy where county board issued a declaration that road was public and instigated criminal action, even though state law allowed the county to make such a declaration).

In essence, to the extent that other Circuits have addressed the question of whether a plaintiff can rest on state law to satisfy the *Monell* requirements when raising a § 1983 claim against a municipality, the short and unequivocal answer is no. A state law mandating municipal action, without some level of discretion, deliberate decisionmaking, or "conscious choice" on the part of the municipality or a policymaker acting on its behalf, simply is not a municipal policy. This is wholly consistent with the Supreme Court's *Monell* analysis and decree that there can be no municipal liability under § 1983 absent actual, intentional policymaking by the municipality itself. *See Tuttle*, 471 U.S. at 823; *Pembaur*, 475 U.S. at 483. *Monell* is satisfied if, and only if, the municipality goes beyond merely enforcing or complying with a mandatory state law by, for instance, acting on a grant of discretionary authority set forth in state law or by putting "flesh on the bones" of the statute, *see Vives*, 524 F.3d at 324, by adding to its plain language in some way. This has not happened here – there is no dispute on this point.

The requirements in Section 624.714, including the specific age restriction Plaintiffs alleges is unconstitutional, are mandates set by the state and imposed on the County Sheriffs. The County Sheriffs and their County employers had no policymaking role in enacting or implementing that state law, nor do they have any duty or authority to set policy related to gun permitting at all. Likewise, they have no discretion or leeway in how or whether to enforce Section 624.714. In fact, they are directly prohibited from deviating from the requirements of this state law, including the requirement that an

applicant be 21 years of age or older. Minn. Stat. § 624.714, subd. 23. Stated another way, the text of Section 624.714 outright bars the Counties from making any conscious or deliberate choice in the administration of the permitting requirements.

Further, to be sure, the County Sheriffs, in fact, have not exercised any conscious or deliberate choice as it relates to Plaintiffs' alleged constitutional injuries by the way he enforced Section 624.714. None has ever even denied a permit to the individual Plaintiffs or any other person for failure to meet the age criteria prescribed by Section 624.714. They certainly have not undertaken to supplement or go beyond the requirements of that state law, particularly as it relates to the age restrictions set by the state legislature. This is not in dispute.

Because the law clearly bars Plaintiffs from relying on Section 624.714 alone to establish *Monell* liability against the County Sheriffs, it thus follows that the County Sheriffs are entitled to summary judgment. The law and facts plainly demonstrate that Plaintiffs have not established § 1983 liability against the County Defendants. To order otherwise, thereby requiring the County Sheriffs and their County employers to serve as "convenient receptacles of liability for violations caused entirely by" the state, *Surplus Store*, 928 F.2d at 791 n. 4, would pit these local governments against the state government and undermine *Monell*'s central holding that municipalities should be liable under § 1983 for only their own alleged constitutional wrongs.

### C. The alleged threat of harm is not caused by a Washington, Mille Lacs, or Douglas County policy.

The lack of a cognizable *Monell* policy notwithstanding, Plaintiffs also cannot establish that any County policy is the "moving force" behind the harm they supposedly have suffered or stand to suffer. Part and parcel of Plaintiffs' contention that the age restriction in Section 624.714 is irredeemably unconstitutional is the unavoidable conclusion that the statute itself is the sole cause of their alleged constitutional injury. *See, e.g.*, *N.N. ex re. S.S. v. Madison Metro. Sch. Dist.*, 670 F. Supp. 2d 927, 941 (W.D. Wis. 2009) (noting that when a plaintiff cannot "point to a separate policy choice made by the municipality … it is the policy contained in [the challenged] law, rather than anything devised or adopted by the municipality, that is responsible for the injury" (quotations and citation omitted)); *Snyder v. King*, 745 F.3d 242, 247 (7th Cir. 2014) ("To say that [a] direct causal exists link when the only local government 'policy' at issue is general compliance with the dictates of state law is a bridge too far; under those circumstances, the state law is the proximate cause of the plaintiff's injury.") (Citations omitted.); *see also Calhoun*, 2019 WL 2079834, at *5 (finding that "any alleged violation of Plaintiff's due process rights … was the result of action undertaken by an entity separate and distinct from Washington County").

Even if Plaintiffs had identified a viable *Monell* policy – which they have not done – their official-capacity claims against the County Sheriffs nevertheless fail for want of causation. Unless the test set out in *Monell* is to "become dead letter," *Tuttle*, 471 U.S. at 823, this court should properly grant summary judgment to the County Sheriffs,

18

dismissing Plaintiffs' § 1983 claims against them premised solely on the mandates imposed by the state legislature in Section 624.714.

## II. THE AGE RESTRICTION IN SECTION 624.714 DOES NOT VIOLATE THE SECOND AMENDMENT.

As addressed at length above, the County Sheriffs had no role in setting the policy reflected in the age restrictions written by the legislature into Minnesota Statutes Section 624.714. To the extent that this court declines to grant summary judgment and dismiss the § 1983 claims against the County Sheriffs on *Monell* grounds, the County Sheriffs note that the challenged restriction in Section 624.714 is well within the bounds of permissible Second Amendment restrictions.

Given the County Sheriffs' mere ministerial role in enforcing the challenged state law and the state's rightful position as the defender of its laws, the County Sheriffs leave further argument on this issue to the state. For the sake of brevity and to avoid unnecessarily duplicative briefing, the County Sheriffs hereby incorporate the state's arguments in Defendant Harrington's Memorandum in Support of his Motion for Summary Judgment that the Plaintiffs' claims fail on Second Amendment grounds. Because the facts and law do not support Plaintiffs' claims, this serves as an alternative ground necessitating the court's grant of summary judgment to the County Sheriffs.

## CONCLUSION

For the reasons set forth above, the County Sheriffs respectfully request that the court grant their motion for summary judgment, dismissing Plaintiffs claims against them in full.

|  | **RUPP, ANDERSON, SQUIRES, WALDSPURGER & MACE, P.A.** |
|---|---|
| Dated: August 4, 2022 | */s/ Kristin C. Nierengarten* <br> Scott T. Anderson (#157405) <br> Kristin C. Nierengarten (#395224) <br> Zachary J. Cronen (#397420) <br> 333 South Seventh Street, Suite 2800 <br> Minneapolis, MN 55402 <br> Phone: (612) 436-4300 <br> Fax: (612) 436-4340 <br> Email: scott.anderson@raswlaw.com <br> kristin.nierengarten@raswlaw.com <br> zachary.cronen@raswlaw.com |