### UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

Kristin Worth, Austin Dye, Axel
Anderson, Minnesota Gun Owners
Caucus, Second Amendment Foundation,
and Firearms Policy Coalition, Inc.,

               Plaintiffs,

    vs.

John Harrington, *in his individual
capacity and in his official capacity as
commissioner of the Minnesota
Department of Public Safety*, Don Lorge,
*in his individual capacity as Sheriff of
Mille Lacs County, Minnesota*, Troy
Wolberson, *in his individual capacity and
his official capacity as Sheriff of Douglas
County, Minnesota*, and Dan Starry, *in
his individual capacity and in his official
capacity as Sheriff of Washington,
County, Minnesota*,

               Defendants.

Case No. 0:21-cv-01348 (KMM/LIB)

**PLAINTIFF AXEL ANDERSON'S
RESPONSES AND OBJECTIONS TO
DEFENDANT COMMISSIONER
JOHN HARRINGTON'S
FIRST SET OF INTERROGATORIES**

    Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff, by his undersigned counsel, hereby serves the following Objections and Responses to Defendant Harrington's First Set of Interrogatories.

### **GENERAL OBJECTIONS**

    Plaintiff objects to the definitions to the extent they exceed the scope and requirements of Rule 33 of the Federal Rules of Civil Procedure. Plaintiff further objects to the definitions of "Plaintiff," "you," and "your" to the extent that they include within their scope plaintiff's litigation counsel for the instant matter and therefore request information clearly protected by the attorney-client privilege and work product doctrine. Plaintiff will interpret those terms not to include plaintiff's litigation counsel.

**Exhibit 6**

## **INTERROGATORIES**

**INTERROGATORY NO. 1:**

Identify each person known to you to have personal knowledge of any facts or matters at issue in this lawsuit. Include a description of the facts or matters as to which you believe each person has personal knowledge.

**RESPONSE:** Plaintiff objects to this request as overbroad and vague because the phrase "any facts or matters at issue in this lawsuit" is undefined. Subject to this and the General Objections, Plaintiff states that because "the constitutionality of the challenged statutory provisions does not present factual questions for determination at trial" but rather turns on "legislative facts," *i.e.*, "facts that bear on the justification for legislation, as distinct from facts concerning the conduct of the parties in a particular case," *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012), and because Plaintiff plans to support his claims with publicly available information, the only personal knowledge relevant to this case is each Plaintiff's knowledge of facts related to standing.

The following individuals have personal knowledge of the facts giving rise to standing for each plaintiff in this lawsuit:

| Name & Contact Information | Subject(s) of Information |
|---|---|
| Kristin Worth<br>*Contact through Plaintiffs' counsel* | Plaintiff's standing and the effect of the Carry Ban |
| Austin Dye<br>*Contact through Plaintiffs' counsel* | Plaintiff's standing and the effect of the Carry Ban |
| Axel Anderson<br>*Contact through Plaintiffs' counsel* | Plaintiff's standing and the effect of the Carry Ban |
| Bryan Strawser<br>*Contact through Plaintiffs' counsel* | Chairman of Minnesota Gun Owners Caucus. Knowledgeable about the purposes and membership of Minnesota Gun Owners Caucus |
| Alan Gottlieb<br>*Contact through Plaintiffs' counsel* | Executive Vice President of Second Amendment Foundation. Knowledgeable |

**Exhibit 6**

| | about the purposes and membership of Second Amendment Foundation. |
|---|---|
| Brandon Combs<br>*Contact through Plaintiffs' counsel* | President of Firearms Policy Coalition. Knowledgeable about the purposes and membership of Firearms Policy Coalition |

**INTERROGATORY NO. 2:**

Identify each person, other than your attorneys, with whom you have communicated regarding the facts or matters at issue in this lawsuit. With respect to each person, provide the date and place of the communication(s) and a brief description of the content of the communication(s).

**RESPONSE:** Plaintiff objects to this request as overbroad and seeking information irrelevant to this case and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks details regarding communications of any kind "regarding the facts or matters at issue in this lawsuit." Because "the constitutionality of the challenged statutory provisions does not present factual questions for determination at trial" but rather turns on "legislative facts," *i.e.*, "facts that bear on the justification for legislation, as distinct from facts concerning the conduct of the parties in a particular case," *Moore*, 702 F.3d at 942, and because Plaintiff plans to support his claims with publicly available information, his discussions regarding the facts or matters at issue in this lawsuit are not relevant. Subject to these and the General Objections, Plaintiff states that he has discussed the lawsuit with the following individuals:

| Name | Date | Description |
|---|---|---|
| Alexis Arneson (girlfriend) | Periodically since June | Has had several short conversations updating her on the lawsuit |
| Tonya Logan (former manager) | June 2021 | Told her he was participating in a lawsuit to reduce the carry age |
| Chris Lynch (current manager) | September 2021 | Told him he was participating in a lawsuit to reduce the carry age |

Exhibit 6

| Greg Anderson (father) | June 2021 | Told him he was participating in a lawsuit to reduce the carry age |
| Melissa Anderson (mother) | June 2021 | Told her he was participating in a lawsuit to reduce the carry age |
| Hannah Anderson (sister) | June 2021 | Told her he was participating in a lawsuit to reduce the carry age |
| Kathleen Anderson (grandmother) | June 2021 | Told her he was participating in a lawsuit to reduce the carry age |
| LaDonna Stehr (grandmother) | June 2021 | Told her he was participating in a lawsuit to reduce the carry age |
| Celeste Edenloff (reporter, The Echo Press) | June 9, 2021 | Spoke with a reporter at a local newspaper regarding the lawsuit |

Furthermore, Plaintiff states that he has had occasional and general conversations around town with individuals who recognized him from newspaper coverage of the lawsuit.

**INTERROGATORY NO. 3:**

Have you ever been a party to any legally contested matter (civil, criminal, or administrative) other than this lawsuit? If so, for each such matter, state the name and present address of each party involved, the date the action was initiated, the name and address of your attorney at the time, the subject matter of the action, the venue of the action, and the current status of the action.

**RESPONSE:** Plaintiff objects to this request as seeking information irrelevant to this case and not reasonably calculated to lead to the discovery of admissible evidence. Subject to that and the General Objections, Plaintiff states he has never been a party to any legal contested matter other than this lawsuit.

**INTERROGATORY NO. 4:**

Please list the addresses of your domicile for the last 5 years, indicating in your answer the dates you resided at each domicile.

3

Exhibit 6

**RESPONSE:** Subject to the General Objections, Plaintiff states that he resides at 200 S. Nelson St., Nelson, MN 56355. He has resided there since April 2021. From May 2020 to April 2021, Plaintiff resided at 1508 Jefferson St., Apt. 23, Alexandria, MN 56308. Prior to May 2020, for the remainder of the last five years, he resided at 28441 240th St., Norcross, MN 56274.

**INTERROGATORY NO. 5:**

Have you completed training in the safe use of a pistol as set forth in Minn. Stat. § 624.714, subd. 2(b)(1) and subd. 2a? If so, please identify the date you completed that training and the location that you completed that training.

**RESPONSE:** Subject to the General Objections, Plaintiff states that he has not completed the training required by Minn. Stat. § 624.714, subd. 2(b)(1) and subd. 2a. Plaintiff would, if he were not ineligible as a result of his age, complete the required training so that he could acquire a permit to carry a handgun legally, but to do so now would be futile.

**INTERROGATORY NO. 6:**

What is your date of birth?

**RESPONSE:** Subject to the General Objections, Plaintiff states that his date of birth is March 22, 2002.

**INTERROGATORY NO. 7:**

Are you prohibited from possessing a firearm under any of the statutes listed in Minn. Stat. § 624.714, subd. 2(b)(4)? If so, for each such prohibition state the statute under which possession is prohibited and the circumstances giving rise to the prohibition.

**RESPONSE:** Subject to the General Objections, Plaintiff states that he is not prohibited from possessing a firearm under any of the statutes listed in Minn. Stat. § 624.714, subd. 2(b)(4).

**INTERROGATORY NO. 8:**

4

Exhibit 6

Are you listed in the criminal gang investigative data system under Minn. Stat. § 299C.091?

**RESPONSE:** Plaintiff objects to this request as asking for information that is known or knowable to the Defendant but not to Plaintiff. Subject to this and the General Objections, Plaintiff states that he does not have access to the criminal gang investigative data system but that he has no reason to believe he is listed in it.

**INTERROGATORY NO. 9:**

Identify each firearm you own, including in your answer the type of firearm and the date of purchase.

**RESPONSE:** Plaintiff objects to this request as overbroad and seeking information irrelevant to the claims and issues in this case and not reasonably likely to lead to the discovery of admissible evidence to the extent it seeks information regarding "each firearm" Plaintiff owns regardless of whether that firearm is a handgun and therefore related to the challenged restrictions in Minn. Stat. § 624.714. Subject to this and the General Objections, Plaintiff states that he possesses a Beretta 92a1 handgun which was gifted to him in May 2020, an AR-15 rifle chambered for .223 Rem/5.56 NATO which was gifted to him in May 2020, a Bergara B14 rifle chambered for .300 Win Mag which he purchased in June 2021, an 1873 Springfield Trapdoor rifle chambered for .45-70 which was gifted to him in July 2021, a reproduction A. Uberti 1873 rifle chambered for .357/.38 which was gifted to him in July 2021, and a reproduction Marlin Model 1895 rifle chambered for .45-70 which was gifted to him in July 2021.

**INTERROGATORY NO. 10:**

Have you ever submitted an application for a permit under Minn. Stat. § 624.714? If so, identify the date you submitted the application, the county sheriff to whom it was submitted, and response you received to that application.

5

Exhibit 6

**RESPONSE:** Subject to the General Objections, Plaintiff states that because he is not qualified to receive a permit to carry under Minn. Stat. § 624.714, subd. 2(b)(2), which requires an applicant to be at least 21 years old, it would be futile for him to apply for such a permit, and so he never has applied. Plaintiff further states that, because he cannot acquire a permit, fear of prosecution under Minn. Stat. § 624.714, subd. 1a, has caused him to refrain from carrying a handgun in public for self-defense.

**INTERROGATORY NO. 11:**

Are you a member of Minnesota Gun Owners Caucus, Second Amendment Foundation, and/or Firearms Policy Coalition, Inc.? If so, please state the date you became a member, the amount of any membership dues you pay, and what activities you participate in as a member of that organization.

**RESPONSE:** Plaintiff objects to this request as overbroad and seeking information irrelevant to the claims and issues in this case and that is not reasonably likely to lead to the discovery of admissible evidence. Specifically, Plaintiff objects to this request to the extent it seeks to discovery the "activities [Plaintiff] participate[s] in as a member of [each] organization." For standing purposes, all that is relevant or discoverable is that Plaintiff is a member of MGOC, SAF, and FPC. His own activities as a member, or the dues he pays, are irrelevant. Subject to this and the General Objections, Plaintiff states that he is a member of all three organizations. He has been a member of FPC since February 8, 2019, when he made a $25 donation. He became a member of SAF on June 7, 2021 and of MGOC on June 7, 2021. He has participated as a member of all three organizations in joining with them to bring this lawsuit.

**INTERROGATORY NO. 12:**

Exhibit 6

Identify the "publicly available information" you plan to use to support your claims as stated in your October 29, 2021 initial disclosures.

**RESPONSE:** Plaintiff objects to this request to the extent it seeks to require Plaintiff to marshal "all" sources he may rely on to support his claims. Because "the constitutionality of the challenged statutory provisions does not present factual questions for determination at trial" but rather turns on "legislative facts," *i.e.*, "facts that bear on the justification for legislation, as distinct from facts concerning the conduct of the parties in a particular case," *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012), the record is not closed and Plaintiff reserves the right to rely on additional publicly available information and sources to support his claims as it becomes necessary in the course of litigation. Subject to this and to the General Objections, Plaintiff states that he is attaching as Exhibit A to these responses a list of historical statutes and other sources on which he may rely to support his claims. For those documents that he is producing in response to RFP No. 3, he has provided a Bates reference in the exhibit.

**INTERROGATORY NO. 13:**

Describe in detail the impact that the age restriction in Minn. Stat. § 624.714 has had on your life.

**RESPONSE:** Subject to the General Objections, Plaintiff states that as a result of the age restriction in Minn. Stat. § 624.714, and his fear of prosecution for violating Minn. Stat. § 624.714, subd. 1a, Plaintiff has refrained from carrying a handgun in public for self-defense as he desires to do. If it were not for the age restriction, he would promptly apply for a permit to carry and that his permit would be quickly granted because he is eligible to carry a handgun under all the requirements of Minn. Stat. § 624.714 except for his age.

**INTERROGATORY NO. 14:**

Exhibit 6

Identify persons you intend to or may call as witnesses at trial and state the substance of each witness' testimony and the facts upon which each witness' testimony will be based.

**RESPONSE:** Plaintiff objects to this request as premature as it requests information that Plaintiffs are not required to disclose until thirty days before trial. *See* Fed. R. Civ. P. 26(3)(B). Subject to that and the General Objections, Plaintiff states that he will make the appropriate disclosures at the proper time.

**INTERROGATORY NO. 15:**

Identify all documents and/or other items of physical evidence that you intend to or may use as trial exhibits in any trial of this matter.

**RESPONSE:** Plaintiff objects to this request as premature as it requests information that Plaintiffs are not required to disclose until thirty days before trial. *See* Fed. R. Civ. P. 26(3)(B). Subject to that and the General Objections, Plaintiff states that he will make the appropriate disclosures at the proper time.

**INTERROGATORY NO. 16:**

Identify every place where you have been employed for the last 5 years, the name and location of the employer, your position of employment, and your dates of employment.

**RESPONSE:** Plaintiff objects to this request as irrelevant and seeking information not reasonably calculated to lead to the discovery of admissible evidence. Subject to that and the General Objections, Plaintiff states:

| Employer | Position | Dates |
|---|---|---|
| Aagard Group, 3711 Iowa St., Alexandria, MN 56308 | Weekend Fabrication Lead | June 2021 – Present |
| AmericInn of Alexandria, 4520 MN-29 S, Alexandria, MN 56308 | Night Auditor | May 2020 – April 2021 |
| Brother's Market, 15 2nd St., Elbow Lake, MN 56531 | Cashier | April 2018 – May 2020 |

8

Exhibit 6

**INTERROGATORY NO. 17:**

With respect to the allegations in Paragraph 66 of the Complaint, describe in detail the incident when you allege your girlfriend "was accosted and chased through the hotel parking lot by a group on unknown aggressors," including information on the date, any witnesses to the incident, and which law enforcement agency, if any, you or your girlfriend reported the incident to.

**RESPONSE:** Plaintiff objects to this request as seeking information that is not relevant to any issue or claim in this case and not reasonably calculated to lead to the discovery of admissible evidence. Because "the constitutionality of the challenged statutory provisions does not present factual questions for determination at trial" but rather turns on "legislative facts," *i.e.*, "facts that bear on the justification for legislation, as distinct from facts concerning the conduct of the parties in a particular case," *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012), particular facts related to Plaintiff are relevant only to his standing to bring this lawsuit. Plaintiff has standing as long as he has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). Subject to these and the General Objections, Plaintiff states that one night in December 2020, he was working an overnight shift at the AmericInn in Alexandria. Many of the workers did not feel safe working there overnight and frequently had visitors come and keep them company. On this occasion, Plaintiff's girlfriend was visiting him in the lobby of the hotel around 3 a.m. and she left briefly to go outside and retrieve something from his truck. When she unlocked the truck the lights turned on, revealing two people hiding behind the truck. She ran back inside the AmericInn and Plaintiff called the Alexandria Police. It took the police 15 minutes to respond and when they arrived they did not get out of their

Exhibit 6

car, they just drove around the area and then left. Plaintiff's girlfriend stayed with him at the hotel until his shift was over.

**INTERROGATORY NO. 18:**

With respect to the allegation in Paragraph 66 of the Complaint, identify all crimes which have occurred at the hotel referenced therein during the last 5 years. For each crime, identify where you were located when the crime occurred.

**RESPONSE:** Plaintiff objects to this request as overbroad, unduly burdensome, and seeking information known to or in the possession of third parties. Plaintiff further objects to this request as seeking information that is not relevant to any issue or claim in this case and not reasonably calculated to lead to the discovery of admissible evidence. Because "the constitutionality of the challenged statutory provisions does not present factual questions for determination at trial" but rather turns on "legislative facts," *i.e.*, "facts that bear on the justification for legislation, as distinct from facts concerning the conduct of the parties in a particular case," *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012), particular facts related to Plaintiff are relevant only to his standing to bring this lawsuit. Plaintiff has standing as long as he has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). Subject to these and the General Objections, Plaintiff states that he does not know what crimes have been committed at the AmericInn in Alexandria, MN during the last 5 years. While he worked at the hotel there were lots of rumors of drugs being sold in the area, strange people frequently hung around the hotel, and a shed behind the hotel was broken into several times between November 2020 and January 2021.

**INTERROGATORY NO. 19:**

**Exhibit 6**

With respect to the allegation in Paragraph 67 of the Complaint, identify the law which prevents you from lawfully owning a Beretta 92A1.

**RESPONSE:** Subject to the General Objections, Plaintiff states no law prevents him from lawfully owning a Beretta 92A1.

**INTERROGATORY NO. 20:**

To the extent that you deny any of the Requests for Admissions served upon you by Defendant Harrington, state your complete basis for such denial, identifying any evidence supporting your position.

**RESPONSE:** Subject to the General Objections, Plaintiff did not deny any of the RFAs. For a clarification regarding Plaintiff's admission to RFA 4, see the response to that RFA.

Dated: April 1, 2022

/s/David H. Thompson
David H. Thompson
Peter A. Patterson
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington DC, 20036
(202) 220-9601 (fax)
(202) 220-9600 (telephone)
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

Blair Nelson
BLAIR W. NELSON, LTD.
205 7th Street N.W., Suite 3
Bemidji, MN 56601

*Attorneys for Plaintiffs*

Exhibit 6

## VERIFICATION OF INTERROGATORY ANSWERS

I, _Axel Anderson_, believe, based upon reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on the **31** day of _March_, 2022

_Axel Anderson_

**Exhibit 6**

# Exhibit A

**Exhibit 6**

## HISTORICAL STATUTES

| Bates # | CITATION |
|---|---|
|  | CHARLES HUMPHREYS, A COMPENDIUM OF THE COMMON LAW IN FORCE IN KENTUCKY (1822). |
| 2505 | 2 RECORDS OF MASSACHUSETTS, 1642-1649 99 (Nathaniel Shurtleff ed., 1853). |
| 2506 | A Supplement to the Act, Intitled, 'An Act for Organizing and Training the Militia of this State' § 6 (1793), *in* ACTS OF THE SEVENTEENTH GENERAL ASSEMBLY OF THE STATE OF NEW JERSEY. AT A SESSION BEGUN AT TRENTON THE 23D DAY OF OCTOBER 1792, AND CONTINUED BY ADJOURNMENTS at 850, 853 (1793). |
| 2508 | An Act for Amending the Several Laws for Regulating and Disciplining the Militia, and Guarding Against Invasions and Insurrections § 2 (1784), *in* 11 WILLIAM WALLER HENING, THE STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA, FROM THE FIRST SESSION OF THE LEGISLATURE, IN THE YEAR 1619, at 476, 476–77 (1823). |
| 2510 | An Act for Establishing a Militia in This State *in* LAWS OF NORTH CAROLINA at 18-9 (1786). |
| 2512 | An Act for Establishing and Conducting the Military Force of New Jersey, § 1, *in* ACTS OF THE THIRTIETH GENERAL ASSEMBLY OF THE STATE OF NEW JERSEY, AT A SESSION BEGUN AT TRENTON, ON THE FIFTH DAY OF FEBRUARY, ONE THOUSAND EIGHT HUNDRED AND SIX, AND CONTINUED BY ADJOURNMENTS, at 536-7 (1806) |
| 2514 | An Act for Establishing the Militia in this State, §§ 1– 2 (1793), *in* 2 LAWS OF THE STATE OF DELAWARE FROM THE FOURTEENTH DAY OF OCTOBER, ONE THOUSAND SEVEN HUNDRED, TO THE EIGHTEENTH DAY OF AUGUST, ONE THOUSAND SEVEN HUNDRED AND NINETY-SEVEN, at 1134–35 (1797) |
| 2516 | An Act For Forming And Regulating The Militia Within The Colony Of The Massachusetts Bay, In New England, And For Repealing All The Laws Heretofore Made For That Purpose (1775) *in* PROVINCE LAWS 1775-1776 at 445 |
| 2517 | An Act for Forming and Regulating the Militia Within This State, and For Repealing All the Laws Heretofore Made for That Purpose (1792) *in* LAWS OF NEW HAMPSHIRE: SECOND CONSTITUTIONAL PERIOD, 1792-1801, at 84-5 (1917) |
| 2519 | An Act for Organizing and Training the Militia of this State § 4, *in* ACTS OF THE SEVENTEENTH GENERAL ASSEMBLY OF THE STATE OF NEW JERSEY. AT A SESSION BEGUN AT TRENTON THE 23RD DAY OF OCTOBER 1792, AND CONTINUED BY ADJOURNMENTS, at 825 (1792) |
| 2520 | An Act for Raising Levies and Recruits to Serve in the Present Expedition against the French, on the Ohio §§ 1–3, *in* 6 WILLIAM WALLER HENING, THE STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA, FROM THE FIRST SESSION OF THE LEGISLATURE, IN THE YEAR 1619, at 438, 438–39 (1819) |
| 2522 | An Act for Regulating and Governing the Militia of the Commonwealth of Massachusetts, and for Repealing All Laws Heretofore Made for That Purpose; excepting an Act Entitled, "An Act for Establishing Rules and Articles for Governing the Troops Stationed in Forts and Garrisons, Within This |

Exhibit 6

| | |
|---|---|
| | Commonwealth, and Also the Militia, When Called Into Actual Service," *in* ACTS AND RESOLVES PASSED BY THE GENERAL COURT OF MASSACHUSETTS, at 380 (1793) |
| 2546 | An Act for Regulating the Militia of the Commonwealth of Pennsylvania (1793) *in* STATUTES AT LARGE OF PENNSYLVANIA 1682-1801, at 454-5 (1909) |
| 2548 | An Act for Regulating the Militia of this Commonwealth (1792), *in* A COLLECTION OF ALL SUCH ACTS OF THE GENERAL ASSEMBLY OF VIRGINIA, OF A PUBLIC AND PERMANENT NATURE, AS ARE NOW IN FORCE, at 282, 282–90 (1803) |
| 2552 | An Act for Settling the Militia (1705), *in* 3 WILLIAM WALLER HENING, THE STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA, FROM THE FIRST SESSION OF THE LEGISLATURE, IN THE YEAR 1619, at 335-6 (1823) |
| 2554 | An Act for the Better Ordering and Regulating Such as Are Willing and Desirous to Be United for Military Purposes Within this Province § 2 (1775), *in* 5 THE STATUTES AT LARGE OF PENNSYLVANIA FROM 1682 TO 1801, at 197, 200 (1898) |
| 2559 | An Act For The Better Ordering And Regulating Such As Are Willing And Desirous To Be United For Military Purposes Within This Province (1755), *in* 516 PENNSYLVANIA ARCHIVES |
| 2563 | An Act for the Better Regulating and Training the Militia § 3 (1755), *in* 6 WILLIAM WALLER HENING, THE STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA, FROM THE FIRST SESSION OF THE LEGISLATURE, IN THE YEAR 1619, at 530, 531(1819) |
| 2565 | An Act for the Better Regulating the Militia § 1, *in* ACTS OF THE GENERAL ASSEMBLY OF THE STATE OF NEW JERSEY, AT A SESSION BEGUN AT PRINCETON ON THE 27TH DAY OF AUGUST 1776, AND CONTINUED BY ADJOURNMENTS 26 (1777) |
| 2566 | An Act for the Regulating, Training, and Arraying of the Militia, and for Providing More Effectually for the Defence and Security of the State § 10 (1781), *in* ACTS OF THE FIFTH GENERAL ASSEMBLY OF THE STATE OF NEW JERSEY, AT A SESSION BEGUN AT TRENTON ON THE 24TH DAY OF OCTOBER, 1780, AND CONTINUED BY ADJOURNMENTS 39, 42 (1781) |
| 2568 | An Act for the Regulation of the Militia of New-Jersey § 1 (1799), *in* ACTS OF THE TWENTY-THIRD GENERAL ASSEMBLY OF THE STATE OF NEW JERSEY, AT A SESSION BEGUN AT TRENTON, ON THE TWENTY-THIRD DAY OF OCTOBER, ONE THOUSAND SEVEN HUNDRED AND NINETY-EIGHT, AND CONTINUED BY ADJOURNMENTS 609 (1799) |
| 2569 | An Act for the Regulation of the Militia of the Commonwealth of Pennsylvania § 1 (1793), *in* 14 THE STATUTES AT LARGE OF PENNSYLVANIA FROM 1682 TO 1801, at 454, 455 (1909) |
| 2572 | An Act for the Regulation of the Militia of the Commonwealth of Pennsylvania § 3 (1780), *in* 10 THE STATUTES AT LARGE OF PENNSYLVANIA FROM 1682 TO 1801, at 144, 146 (1904) |
| 2575 | An Act for the Regulation of the Militia of the Commonwealth of Pennsylvania § 2 (1793), *in* 14 THE STATUTES AT LARGE OF PENNSYLVANIA FROM 1682 TO 1801, at 454, 455 (1909) |
| 2577 | An Act for the Regulation of the Militia of the Commonwealth of Pennsylvania § 1 (1799), *in* 16 THE STATUTES AT LARGE OF PENNSYLVANIA FROM 1682 TO 1801, at 276, 276 (1911) |

Exhibit 6

| 2579 | An Act for the Regulation of the Militia of the Commonwealth of Pennsylvania § 1 (1802), *in* 17 THE STATUTES AT LARGE OF PENNSYLVANIA FROM 1802 TO 1805, at 174, 174 (1915) |
|------|---|
| 2581 | An Act for the Regulation of the Militia of the Commonwealth of Pennsylvania § 2 (1807), *in* 18 THE STATUTES AT LARGE OF PENNSYLVANIA FROM 1806 TO 1809, at 572, 573 (1915) |
| 2582 | An Act for the Reorganization of the Military Forces of the State of Michigan § 6 (1863), *in* 1 JAMES S. DEWEY, THE COMPILED LAWS OF THE STATE OF MICHIGAN 317, 320 (1872) |
| 2583 | An Act for the Settling and Better Regulation of the Militia § 2, *in* 4 WILLIAM WALLER HENING, THE STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA, FROM THE FIRST SESSION OF THE LEGISLATURE, IN THE YEAR 1619, at 118-9 (1820) |
| 2585 | An Act Obliging the Male White Inhabitants of This State to Give Assurances of Allegiance to the Same And for Other Purposes Therein Mentioned *in* THE STATUTES AT LARGE OF PENNSYLVANIA FROM 1682 TO 1801 (1777) at 110 (1909) |
| 2590 | An Act to Amend and Reduce into One Act, the Several Laws for Regulating and Disciplining the Militia, and Guarding Against Invasions and Insurrections § 3 (1785), *in* 12 WILLIAM WALLER HENING, THE STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA, FROM THE FIRST SESSION OF THE LEGISLATURE, IN THE YEAR 1619, at 9, 10, 12 (1823) |
| 2594 | An Act to Embody, for a Limited Time, One Thousand of the Militia of this State, for the Defence of the Frontiers Thereof §§ 1, 3 (1778), *in* ACTS OF THE GENERAL ASSEMBLY OF THE STATE OF NEW JERSEY. AT A SESSION BEGUN AT TRENTON ON THE 27TH DAY OF OCTOBER, 1778 AND CONTINUED BY ADJOURNMENTS 58, 58–59 (1778) |
| 2596 | An Act to Establish a Company of Artillery, in the City of New–Brunswick, *in* ACTS OF THE GENERAL ASSEMBLY OF THE STATE OF NEW JERSEY, 11-2 (1782) |
| 2598 | An Act to Establish an Uniform Militia Throughout this State §§ 1, 4 (1807), *in* LAWS OF THE STATE OF DELAWARE PASSED AT A SESSION OF THE GENERAL ASSEMBLY WHICH WAS BEGUN AND HOLDEN AT DOVER, ON TUESDAY THE FOURTH, AND ENDED ON THURSDAY THE THIRTEENTH OF AUGUST, IN THE YEAR OF OUR LORD, ONE THOUSAND EIGHT HUNDRED AND SEVEN 123, 123, 125 (1807) |
| 2604 | An Act to Exempt Minors from Militia Duty in Time of Peace § 1 (1829), *in* ACTS OF THE FIFTY-FOURTH GENERAL ASSEMBLY OF THE STATE OF NEW JERSEY, AT A SESSION BEGUN AT TRENTON, ON THE TWENTY-SEVENTH DAY OF OCTOBER, ONE THOUSAND EIGHT HUNDRED AND TWENTY-NINE 3, 3 (1829) |
| 2606 | An Act to Organise, Govern, and Discipline the Militia art. IV, § 22 (1835), *in* 2 LAWS OF A PUBLIC AND GENERAL NATURE OF THE STATE OF MISSOURI, PASSED BETWEEN THE YEARS 1824 & 1836, at 512, 521 (1842) |
| 2616 | An Act to Organize and Discipline the Militia § 1 (1837), *in* ACTS OF A GENERAL NATURE, PASSED AT THE FIRST SESSION OF THE THIRTY-FIFTH GENERAL ASSEMBLY OF THE STATE OF OHIO 18, 18 (1837) |
| 2617 | An Act to Organize the Militia § 33 (1818), *in* LAWS OF THE STATE OF NEW YORK, PASSED AT THE FORTY-FIRST SESSION OF THE LEGISLATURE 211, 225 (1818) |
| 2618 | An Act to Organize the Militia of this State (1794), *in* AT THE GENERAL ASSEMBLY OF THE GOVERNOR AND COMPANY OF THE STATE OF RHODE-ISLAND AND |

Exhibit 6

|  | PROVIDENCE-PLANTATIONS, BEGUN AND HOLDEN BY ADJOURNMENT AT EAST-GREENWICH, WITHIN AND FOR THE STATE AFORESAID, ON THE LAST MONDAY IN MARCH, IN THE YEAR OF OUR LORD ONE THOUSAND SEVEN HUNDRED AND NINETY-FOUR, AND OF INDEPENDENCE THE EIGHTEENTH 14, 14–15 (1794) |
|---|---|
| 2619 | An Act to Organize the Militia Throughout the State of South Carolina, in Conformity with the Act of Congress (1794), *in* 485-7 THE STATUTES AT LARGE OF SOUTH CAROLINA: ACTS RELATING TO CORPORATIONS AND THE MILITIA (1840) |
| 2622 | An Act to Prevent the Use of Fire Arms by Free Negroes and Free Mulattoes, and for Other Purposes § 1 (Feb. 10, 1832), *in* VII LAWS OF THE STATE OF DELAWARE, Ch. CLXXVI, 208 (S. Kimmey, 1841) |
| 2623 | An Act to Punish Certain Offences Therein Named, and for Other Purposes, ch. 23, § 1, 1865 Miss. Laws *in* THE CIVIL RIGHTS RECORD, BLACK AMERICANS AND THE LAW, 1849–1970 37-41 (Richard Bardolph ed. 1970) |
| 2624 | An Act to Regulate and Discipline the Militia of This State *in* LAWS OF MARYLAND, MADE AND PASSED AT A SESSION OF ASSEMBLY 22 (1793) |
| 2625 | An Act to Regulate the Militia (1786), *in* 1 THOMAS GREENLEAF, LAWS OF THE STATE OF NEW YORK 227 (1792) |
| 2628 | An Act to Regulate the Militia of the Commonwealth of Pennsylvania § 4 (1777), *in* 9 THE STATUTES AT LARGE OF PENNSYLVANIA FROM 1682 TO 1801, at 75, 77 (1909) |
| 2630 | An Act to Revise and Amend the Militia Law of This State, and to Adapt the Same to the Act of the Congress of the United States, Passed the Eighth Day of May, One Thousand Seven Hundred and Ninety–Two, Entitled "An Act More Effectually to Provide for the National Defence by Establishing and Uniform Militia Throughout the United States," *in* DIGEST OF THE LAWS OF GEORGIA, 458-60 (1792) |
| 2633 | An Act, for Regulating and Governing the Militia of this State § 15 (1797), *in* 2 THE LAWS OF THE STATE OF VERMONT DIGESTED AND COMPILED 122, 131–32 (1808) |
| 2635 | An Act, for the Better Regulation of the Militia § 2 (1738), *in* 5 WILLIAM WALLER HENING, THE STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA, FROM THE FIRST SESSION OF THE LEGISLATURE, IN THE YEAR 1619, at 16 (1819) |
| 2636 | An act for the better security of the inhabitants by obliging the male white persons to carry firearms to places of public worship (1770) *in* 29 THE COLONIAL RECORDS OF THE STATE OF GEORGIA 137–40 (A. Candler ed. 1911) |
| 2640 | An Ordinance for Raising and Embodying a Sufficient Force, for the Defence and Protection of this Colony (1775), *in* 9 WILLIAM WALLER HENING, THE STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA, FROM THE FIRST SESSION OF THE LEGISLATURE, IN THE YEAR 1619, at 9, 16–17 (1821) |
| 2642 | Assize of Arms (1181), reprinted *in* 1 SOURCES OF ENGLISH CONSTITUTIONAL HISTORY 85 (Carl Stephenson & Frederick George Marcham eds. & trans., 1937) |
| 2645 | Laws of the Colony of New Plymouth (1657), *in* THE COMPACT WITH THE CHARTER AND LAWS OF THE COLONY OF NEW PLYMOUTH 28, 102 (1836) |
| 2646 | Militia § 58 *in* ACTS AND LAWS OF CONNECTICUT at 308 (1792) |
| 2647 | NEW HAVEN'S SETTLING IN NEW ENGLAND AND SOME LAWS FOR GOVERNMENT 64 (Chapman ed., 1656) |
| 2649 | Newport Records (1639), *in* 1 RECORDS OF THE COLONY OF RHODE ISLAND AND PROVIDENCE PLANTATIONS IN NEW ENGLAND at 87, 94 (1856) |

Exhibit 6

| 2650 | No. 1154, An Act for the Regulation of the Militia of This State (1782), *in* 9 THE STATUTES AT LARGE OF SOUTH CAROLINA 682-3 (McCord ed., 1841) |
|------|-----------------------------------------------------------------------------------------------------------------------------------------------|
| 2652 | Proceedings of the Council of Maryland (June 23, 1642), *in* 3 ARCHIVES OF MARYLAND 103 (1885) |
| 2653 | Proceedings of the Virginia Assembly (1619), *in* NARRATIVES OF EARLY VIRGINIA 245, 273 (Lyon Gardiner Tyler ed., 1907) |
| 2654 | Records of the General and Particular Courts (1643), *in* THE PUBLIC RECORDS OF THE COLONY OF CONNECTICUT 1, 95 (1850) |
| 2655 | Resolutions Directing the Mode of Levying Taxes on Non-Associators para. 1–2, *in* 8 THE STATUTES AT LARGE OF PENNSYLVANIA FROM 1682 TO 1801, at 538, 539 (1902) |
| 2657 | Resolves of Assembly, Agreed to November 8th, 1775 para. 3, *in* 8 THE STATUTES AT LARGE OF PENNSYLVANIA FROM 1682 TO 1801, at 492, 492 (1902) |
| 2658 | The Colony Records (1636), *in* 1 RECORDS OF THE GOVERNOR AND COMPANY OF THE MASSACHUSETTS BAY IN NEW ENGLAND 190 (1853) |
| 2659 | The Militia Act of 1792, Act of May 8, 1792, ch. 33, § 1, 1 Stat. 271-2 |

**Exhibit 6**

## OTHER HISTORICAL SOURCES

| Bates # | Citation |
|---|---|
| | 1 WALTER L. LEMING, DOCUMENTARY HISTORY OF RECONSTRUCTION (1906) |
| | 1 WILLIAM BLACKSTONE, COMMENTARIES (1753) |
| | 1 WILLIAM HAWKINS, A TREATISE OF THE PLEAS OF THE CROWN (1716) |
| | JONATHAN ELLIOT, THE DEBATES IN THE SEVERAL STATE CONVENTIONS ON THE ADOPTION OF THE FEDERAL CONSTITUTION (1863) |
| | JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES (1833) |
| | THOMAS M. COOLEY, THE GENERAL PRINCIPLES OF CONSTITUTIONAL LAW IN THE UNITED STATES OF AMERICA (1880) |
| | WILLIAM LAMBARDE, EIRENARCHA (1588) |
| | WILLIAM M. DARLINGTON, CHRISTOPHER GIST'S JOURNALS (1893) |
| | WILLIAM RAWLE, A VIEW OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA (William S. Hein & Co. 2003) (2d ed. 1829) |
| 2661 | 2 Annals. of Cong. 2088, 2092, 2099 (1790) |
| 2664 | 3 JAMES WILSON, THE WORKS OF THE HONOURABLE JAMES WILSON 79 (1804) |
| 2665 | Charles Lee, A Friendly Address to all reasonable Americans, on the Subject of our Political Confusions (Feb. 3, 1775), in MEMOIRS OF THE LIFE OF THE LATE CHARLES LEE, ESQ. 136-154 (1792) |
| 2685 | CONG. GLOBE, 39th Cong., 1st Sess. 1182 (1866) (statement of Sen. Pomeroy) |
| 2685 | George Washington, Sentiments on a Peace Establishment (May 2, 1783) in THE WRITINGS OF GEORGE WASHINGTON 389 (John C. Fitzpatrick, ed. 1938) |
| 2687 | James Wilson, Lectures on Law, in 2 COLLECTED WORKS OF JAMES WILSON 1016-17 (Kermit L. Hall & Mark David Hall eds., 2007) |
| 2689 | JOEL BARLOW, ADVICE TO THE PRIVILEGED ORDERS IN THE SEVERAL STATES OF EUROPE RESULTING FROM THE NECESSITY AND PROPRIETY OF A GENERAL REVOLUTION IN THE PRINCIPLE OF GOVERNMENT, PART 1 (1792), https://quod.lib.umich.edu/e/evans/N18548.0001.001?rgn=main;view=toc |
| 2754 | John Adams, *Adams' Argument for the Defense: 3-4 December 1770*, NAT'L ARCHIVES: FOUNDERS ONLINE, https://founders.archives.gov/documents/Adams/05-03-02-0001-0004-0016 |
| 2784 | Paine's Argument for the Crown, in LEGAL PAPERS OF JOHN ADAMS (Adams Papers Digital ed. 2022) |
| 2842 | Journal of Convention: Wednesday, February 6, 1788, in DEBATES AND PROCEEDINGS IN THE CONVENTION OF THE COMMONWEALTH OF MASSACHUSETTS 86-89 (1856) |
| 2846 | Letter from Thomas Jefferson to George Hammond, British Ambassador (May 15, 1793) in 6 THE WRITINGS OF THOMAS JEFFERSON 252-53 (P. Ford ed. 1895) |
| 2849 | Letter from Thomas Jefferson to Peter Carr (Aug. 19, 1785), in 1 THE WORKS OF THOMAS JEFFERSON 398 (H. A. Washington ed., 1884) |
| 2852 | MONTICELLO, *Firearms*, https://goo.gl/W6FSpM (last visited Jan. 20, 2022) |
| 2859 | Tench Coxe, *A Pennsylvanian*, No. 3, PA. GAZETTE (Feb. 20, 1788) |

**Exhibit 6**

| 2863 | *The Address and Reasons of Dissent of the Pennsylvania Minority of the Convention of the State of Pennsylvania and their Constituents* (1787) *in* DOCUMENTS FROM THE CONTINENTAL CONGRESS AND THE CONSTITUTIONAL CONVENTION, 1774 to 1789 (Library of Congress) |
|------|-------------------------------------------------------------------------------------------------------------------------------------------------|
| 2892 | *The Twelve United Colonies, by their Delegates in Congress, to the Inhabitants of Great Britain* (July, 1775), *in* 2 JOURNALS OF THE CONTINENTAL CONGRESS 1774-1789 (reproduced in THE AVALON PROJECT, YALE LAW SCHOOL) |
| 2902 | Walter Moyle & John Trenchard, *An Argument Shewing, That a Standing Army Is Inconsistent with a Free Government, And Absolutely Destructive to the Constitution of the English Monarchy* (1697) |

Exhibit 6