UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Kristin Worth, Austin Dye, Axel Anderson, Minnesota Gun Owners Caucus, Second Amendment Foundation, Firearms Policy Coalition, Inc.,<br><br>          Plaintiffs,<br><br>v.<br><br>John Harrington, in his individual capacity and in his official capacity as Commissioner of the Minnesota Department of Public Safety, Don Lorge, in his official capacity as Sheriff of Mille Lacs County, Minnesota, Troy Wolbersen, in his official capacity as Sheriff of Douglas County, Minnesota, and Dan Starry, in his official capacity as Sheriff of Washington County, Minnesota,<br><br>          Defendants. | Case No. 21-cv-01348-KMM/LIB<br><br>**DEFENDANTS DON LORGE, TROY WOLBERSEN, AND DAN STARRY'S RESPONSE MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

---

## INTRODUCTION

Plaintiffs seek summary judgment on their claims that Minnesota Statutes Section 624.714 violates the Second Amendment because it does not allow for 18- to 20-year-olds to obtain permits to carry handguns in public. Plaintiffs' arguments on this motion focus solely on their claims under Count I of the Complaint and are devoid of any mention of their claims under Count II, which asserts specifically that the failure of Section 624.714 to allow 18- to 20-year-old women to obtain carry permits violates the Second Amendment. Even at that, Plaintiffs do not address, much less overcome,

1

significant and fatal flaws in their position that the age restriction in Section 624.714 is unconstitutional. Similarly, Plaintiffs make only a passing reference to Defendants Mille Lacs County Sheriff Don Lorge, Douglas County Sheriff Troy Wolbersen, and Washington County Sheriff Dan Starry ("County Sheriffs") and provide no argument as to why they should be held constitutionally liable for a state law over which they have no policymaking authority and under which they have no discretion. Plaintiffs cannot establish that they are entitled to judgment as a matter of law by simply ignoring these issues. Their motion should properly be denied.

## ARGUMENT

I. **PLAINTIFFS' CLAIMS AGAINST THE COUNTY SHERIFFS FAIL UNDER *MONELL*.**

As set forth in detail in County Sheriffs' Memorandum of Law in Support of their Motion for Summary Judgment (Doc. 53), which the County Sheriffs hereby incorporate into this opposition to Plaintiff's motion for summary judgment, Plaintiffs have failed to identify a policy or custom attributable to the County Sheriffs or their County employers that is the moving force behind Plaintiffs' alleged constitutional injuries. Yet, this is necessary to satisfy the requirements of *Monell*, which Plaintiffs must do before they can prevail on § 1983 claims against these municipal actors in their official capacities. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (explaining that there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" to support a plaintiff's § 1983 claim).

Plaintiff's own summary judgment arguments reinforce the fact that they have not

2

and cannot satisfy *Monell* to hold the County Sheriffs constitutionally liable for the existence of the challenged state law. In fact, Plaintiffs barely reference the County Sheriffs in their arguments, stating only that "[t]he Defendants have key roles in enforcement of" Section 624.714 and the County Sheriffs are "responsible for processing applications for permits as well as enforcing in their respective counties Minnesota's laws, regulations, practices, and customs concerning the carrying of firearms." Doc. 42, at 6. They acknowledge, however, that the County Sheriffs have no say over the challenged law, but rather "*must* issue a permit if the statutory criteria are met." *Id.* at 3 (emphasis in original). Plaintiff's claims against the County Sheriffs fail under *Monell*. This fact alone requires denial of their motion as it relates to these County Sheriff defendants.

## II. THE AGE RESTRICTION IN SECTION 624.714 DOES NOT VIOLATE THE SECOND AMENDMENT.

The County Sheriffs have only a ministerial role in enforcing the state law challenged in this action. Accordingly, the County Sheriffs rely on the state to defend its law and again incorporate the state's arguments that Plaintiffs' claims fail on Second Amendment grounds. It bears briefly highlighting, however, the insurmountable flaws in Plaintiffs' position in this case.

### A. Minnesota's modest carry framework is not a "ban."

At the outset, it is important to note what is being challenged in this Second Amendment action. Despite Plaintiff's references to "Minnesota's Ban,"[1] Minnesota is a

---

[1] Doc. 42, at 3, 22.

"shall issue" state, meaning its statutory framework for issuing permits to carry handguns is far from a ban. According to the annual report issued by the Minnesota Department of Public Safety Bureau of Criminal Apprehension, in 2021 alone, 106,488 permits to carry handguns were issued. *BCA Releases 2021 Permit to Carry Annual Report*, Office of Communications, A Division of the Minnesota Department of Public Safety (March 1, 2022), https://dps.mn.gov/divisions/ooc/news-releases/Pages/BCA-Releases-2021-Permit-to-Carry-Annual-Report.aspx#. While the individual Plaintiffs do not have the unfettered right to carry loaded guns in public (nor does anyone else), they can – and do – own a large number of firearms, including several pistols. For example, Plaintiff Dye owns:

1) a Black Aces Pro Series S Max shotgun (12 gauge),
2) Remington 870 shotgun (12 gauge),
3) a Tristar NWFT shotgun (12 gauge),
4) a Fox Double Barrel Shotgun (12 gauge),
5) a Smith and Wesson M&P 9mm pistol,
6) a Smith and Wesson M&P 15-22 pistol, and
7) a Kar98k rifle chambered for 7.92x57mm.

Doc. 58, Ex. 5, at Response to Interrog. No. 9. Plaintiff Anderson has:

1) Beretta 92a1 handgun,
2) an AR-15 rifle chambered for .223 Rem/5.56 NATO,
3) a Bergara B14 rifle chambered for .300 Win Mag,
4) an 1873 Springfield Trapdoor rifle chambered for .45-70,
5) a reproduction A. Uberti 1873 rifle chambered for .357/.38, and
6) a reproduction Marlin Model 1895 rifle chambered for .45-70.

Doc. 58, Ex. 6, at Response to Interrog. No. 9. Plaintiff Worth has an F-1 Firearms Patriot FDR-15 3G rifle chambered for .223 Rem. Doc. 58, Ex. 4, at Response to Interrog. No. 9.

Not only do the individual Plaintiffs possess a sizeable cache of firearms, they are in fact free to do many things with their firearms, including their pistols. Even without a permit under Section 624.714, which specifically relates to pistols, they may:

> (1) keep or carry about the person's place of business, dwelling house, premises or on land possessed by the person a pistol;
> (2) carry a pistol from a place of purchase to the person's dwelling house or place of business, or from the person's dwelling house or place of business to or from a place where repairing is done, to have the pistol repaired;
> (3) carry a pistol between the person's dwelling house and place of business;
> (4) carry a pistol in the woods or fields or upon the waters of this state for the purpose of hunting or of target shooting in a safe area; or
> (5) transport a pistol in a motor vehicle, snowmobile or boat if the pistol is unloaded, contained in a closed and fastened case, gunbox, or securely tied package.

Minn. Stat. § 624.714, subd. 9.

Despite Plaintiffs advancing a narrative that this is a "Ban," the facts and law show otherwise. Even still, the U.S. Supreme Court has expressly recognized on multiple occasions that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2128 (2022) (*quoting District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The Second Amendment "is neither a regulatory straightjacket nor a regulatory blank check." *Id.*, at 2162 (J. Kavanaugh, concurring). Instead, "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations." *Id*. In fact, Justice Kavanaugh endorsed precisely the type of framework set forth in Section 624.714, stating in his *Bruen* concurrence, that under the Court's ruling, "[g]oing forward, [] the 43 States that

5

employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so." *Id.*

### B. Plaintiffs' historical analysis misapplies the *Bruen* holding.

In arguing that the minimal age restriction placed on the carrying of handguns in public by Section 624.714 runs afoul of the Second Amendment, Plaintiffs attempt to diminish the importance of the laws from the 19th Century, which provided reasonable regulations relating to the possession of guns by 18- to 20-year-olds, instead contending that 1791 is the "key year" for the Court's analysis. Doc. 42, at 17. Yet, in crafting that argument they rely on late 18th Century militia laws to assert that the *duty* imposed on white men under those laws created a seemingly unlimited *right* to possess and carry a firearm in public. All the while, they rely on an overly narrow standard to reach the conclusion that there are no historically analogous laws to Minnesota's 21-year-old carry permitting requirement.

In essence, Plaintiffs want to cherry-pick which historical laws the court considers in analyzing their Second Amendment claims and expects that the court will simply wear blinders when a law – or even a portion of a law – does not support their position. Even assuming for purposes of argument that the plain text of the Second Amendment covers 18- to 20-year-olds – which it does not[2] – Minnesota's modest regulation on public-carry is "consistent with the Nation's historical tradition of firearm regulation." *Bruen* , 142

---

[2] As outlined in the Commissioner's Memorandum (Doc. 49), at the time of the adoption of both the Second and Fourteenth Amendments, 18- to 20-year-olds were not adults under the law. It is the Plaintiffs' burden to establish this element and they cannot do so. Accordingly, their desired conduct does not fall within the plain text of the Second Amendment and their claim fails without a need to address the historical analogies argument.

6

S.Ct. at 2126. The arguments presented by Plaintiffs miss the point.

First, Plaintiffs argue that the "key year" the court should consider when determining whether Minnesota's law has a historical analogue is 1791. To support this argument, Plaintiffs cite to *Bruen's* discussion that "individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government." However, the *Bruen* court expressly left this question open. *Id.* at 2138. If the *Bruen* majority had viewed this issue as settled as the Plaintiffs now claim, it would have said so. Not only did the majority decline to adopt the position advanced by Plaintiffs, the *Bruen* majority explained that a state "is bound to respect the right to keep and bear arms because of the Fourteenth Amendment, not the Second." *Id.* at 2137. To be clear, the Fourteenth Amendment was adopted in 1868. As such, there was no right to keep and bear arms constraining Minnesota under the United States Constitution until 1868. Accordingly, the relevant years for a *Bruen* analysis is the period around 1868.

Additionally, the "examination of a variety of legal and other sources to determine *the public understanding* of a legal text in the period after its enactment or ratification" is also "a critical tool of constitutional interpretation." *Heller*, 554 U.S. at 604 (emphasis in original). While *Bruen* reiterates that to the extent later history "contradicts" earlier evidence, the legal text controls, *Bruen*, 142 S.Ct. at 2154, the Court does not prohibit consideration of later history that is consistent with or informs the meaning of the earlier evidence. What this means is that the laws of 1868 – at the time the Second Amendment was applied to the states – are not the end of the court's inquiry. Instead, to end the

inquiry here would be contrary to the holding in *Bruen* and *Heller*. The Amicus Brief of Everytown for Gun Safety in Support of Defendants' Motion for Summary Judgment ("Everytown Memorandum") addresses this standard and the proper focus of the Court's analysis in greater detail. Doc. 70, at 3-9. And the state's memorandum of law in support of its motion for summary judgment shows in great detail that there is a longstanding tradition of firearms regulation much like the one found in Section 624.714. Doc. 49.

Even if the focus were properly on 1791, the laws Plaintiffs rely on from the founding era, which are almost exclusively militia-participation laws, do not support their position. Specifically, Plaintiffs assert that "militia membership did not just entail an entitlement to own a firearm, it *required* ownership." Doc. 42, at 17. In doing so, they specifically cite to the Militia Act of 1792 – which is notably after the "key year" of 1791 and was not a law in place at the time of the Second Amendment's ratification – as a basis for why 18-year-olds were entrusted with bearing arms. *Id.* Importantly, however, many of the foundation-era laws, including the Militia Act of 1792, provided that the militia requirement had an upper age limit as well. In the case of the Militia Act of 1792, it was 45 years old. Of course, Plaintiffs – and the County Sheriffs for that matter – do not assert that the right to bear arms expires once someone reaches a certain age limit. But this demonstrates the significant problems in using these types of laws to claim that a duty under the law implies a right. What Plaintiffs really seek is for this court to find that such duty implies a seemingly adjacent, but fundamentally different right. That is not supported by *Bruen*.

Finally, Plaintiffs attempt to create an unduly narrow standard for analyzing

whether longstanding firearms restrictions are analogous to Minnesota's scheme. The *Bruen* majority declined to adopt a specific standard for assessing whether a modern law is analogous to a historical predecessor. It noted, however, that *Heller* and *McDonald* "point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S.Ct. at 2133. Plaintiffs, on the other hand, seem to take the position that the court must disregard every law that is not an identical twin to Minnesota's scheme. That is not the standard from *Bruen*.

For example, Plaintiffs assert that the laws punishing the sale of pistols to individuals under 21 years old are not analogous to Minnesota's permit to carry requirements. They argue that the burden of a 21-and-older purchase requirement is not the same as the burden of a 21-and-older permit-to-carry requirement. However, a prohibition on purchasing a pistol by someone who is under 21 years old means that the individual is completely dependent on other people providing them a pistol. Without a doubt, this burden is comparable – if not higher – than a modest age requirement for a carry permit. Such a purchase restriction requires both tangible and intangible resources to even obtain ownership of a gun that simply are not at issue under Section 624.714. Instead, under Section 624.714, individuals can legally purchase pistols and use their purchased pistols for a wide range of purposes without a permit (and thus uninhibited by the age restriction to obtain such a permit), which they would not be able to do in a 21-to-purchase jurisdiction. While these burdens are not identical, they are incredibly similar and should be viewed as analogous for purposes of the *Bruen* analysis.

Plaintiffs attempt to draw an unduly-narrow analogies standard and exclude

purchase restrictions for an obvious reason: they want to have as few comparable laws as possible for the court to consider. Commissioner Harrington, however, has already outlined the significant record showing that 18- to 20-year-old permitting requirements are rooted in this country's historical tradition of firearms regulation. Additionally, there are a number of 21-to-purchase laws that should be considered by the court in this analysis. In fact, Plaintiffs themselves acknowledge the numerous regulations based on an individual's age from the Reconstruction Era and merely contend, based on threadbare rationale, that we should ignore those laws. *See* Doc. 42, at 21-22. For instance, Plaintiffs cite *Jones v. Bonta*, 34 F.4th 704, 720 (9th Cir. 2022), which found 20 laws that arguably apply to 18- to 20-year-olds. Doc. 42, at 26.[3] While a majority of those laws prohibited sales of pistols to those under 21 years old, those laws are clearly analogous to the case at hand. Those types of laws can and should be considered by the court when determining whether Minnesota's law has any historical analogue.

Without a doubt, the "why" is the same between carry and purchase restrictions for 18- to 20-year-olds: public safety concerns regarding handling of deadly weapons by those under 21. The "how" is likewise comparable: creating modest and reasonable regulations on the gun-related right of those under 21 to obtain pistols. These types of laws are "relatively similar" and cannot simply be ignored by the court at Plaintiffs'

---

[3] In *Jones*, which was decided before *Bruen*, the court applied intermediate and strict scrutiny to the different claims raised by the plaintiffs. However, the *Bruen* court did away with a means-end scrutiny test. Rather, as outlined in the parties' briefs in this matter, if the plain text of the Second Amendment covers an individual's conduct, the question becomes whether the regulation is "consistent with the Nation's historical tradition of firearms regulation." *Bruen*, 142 S.Ct. at 2130. So, while the ultimate holding is inconsistent with *Bruen*, that court's summary of regulations is relevant to determining whether Section 624.714 has a historical analogue.

request. To follow Plaintiffs' arguments and disregard every law that is not an identical twin to Section 624.714 would be an improperly narrow application of *Bruen*.

### III. PLAINTIFFS HAVE WAIVED THEIR CLAIM THAT SECTION 624.714 IS UNCONSTITUTIONAL AS APPLIED TO 18- TO 20-YEAR-OLD WOMEN.

Plaintiffs failed to even mention Count II of their Complaint in their summary judgment memorandum. On its own, this establishes that Plaintiffs have waived this claim and the court should issue summary judgment in favor of the Defendants on that Count. At the same time, Plaintiff's silence on this Count speaks volumes.

Plaintiffs' disregard of this claim, which alleges that specifically women ages 18 to 20 experience an injury to their Second Amendment rights under Section 624.714, makes sense in light of the *Bruen* holding. In order to succeed on this claim, Plaintiffs would be required to rely upon laws from the 18th and 19th centuries that show women have a broader Second Amendment right than men. There are clearly no such laws. In fact, the militia laws which Plaintiffs rely upon for their historical analysis applied only to men. *See* Militia Act of 1792 (applying to "every free able-bodied white male citizen"). Plaintiffs would not be able to find a single law that provided women with any protections under the Second Amendment, much less broader protections as compared to their male counterparts. The laws of that time extending gun rights – and imposing gun-related duties – did so only to men and, more specifically, to white men.

Reading Plaintiffs' proposed framework for analyzing their claim strictly, their argument must be that the right to carry a gun in public still today extends only to white men (and only those under 45). This surely cannot be their intention. But Plaintiffs' only

11

way of escaping this result is by simply ignoring, without explanation, those portions of the historical laws upon which they base their argument that do not support their narrative. And, of course, if Plaintiffs alternatively tried to open the door to a means-end scrutiny test in support of their Count II to show that women should have broader protections under the Second Amendment, such an attempt would run afoul of the *Bruen* holding.

Even including this claim in their Complaint highlights the absurdity of Plaintiffs' position and to defend Count II would be to lay those issues bare before the Court. Whatever their reasons for now ignoring this claim, it must properly be dismissed at this juncture given Plaintiffs' clear unwillingness to argue in its favor.

## CONCLUSION

For the reasons set forth above and in the County Sheriff's initial memorandum in support of their motion for summary judgment (Doc. 53), along with the Second Amendment arguments set forth in Commissioner Harrington's summary judgment memoranda (including Doc. 49) and the amicus briefs filed by Everytown for Gun Safety (Doc. 70) and the Gifford Law Center to Prevent Gun Violence (Doc. 71), the County Sheriffs respectfully request that the court deny Plaintiffs' motion for summary judgment.

|  |  |
|---|---|
|  | **RUPP, ANDERSON, SQUIRES, WALDSPURGER & MACE, P.A.** |
| Dated: August 25, 2022 | */s/ Kristin N. Nierengarten* |
|  | Scott T. Anderson (#157405) |
|  | Kristin C. Nierengarten (#395224) |
|  | Zachary J. Cronen (#397420) |
|  | 333 South Seventh Street, Suite 2800 |
|  | Minneapolis, MN 55402 |
|  | Phone: (612) 436-4300 |
|  | Fax: (612) 436-4340 |
|  | Email: scott.anderson@raswlaw.com |
|  | kristin.nierengarten@raswlaw.com |
|  | zachary.cronen@raswlaw.com |

RASWM: 219048