UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Kristin Worth, Austin Dye, Axel Anderson, Minnesota Gun Owners Caucus, Second Amendment Foundation, Firearms Policy Coalition, Inc.,<br><br>   Plaintiffs,<br><br>v.<br><br>John Harrington, in his individual capacity and in his official capacity as Commissioner of the Minnesota Department of Public Safety, Don Lorge, in his official capacity as Sheriff of Mille Lacs County, Minnesota, Troy Wolbersen, in his official capacity as Sheriff of Douglas County, Minnesota, and Dan Starry, in his official capacity as Sheriff of Washington County, Minnesota,<br><br>   Defendants. | Case No. 21-cv-01348-KMM/LIB<br><br><br><br>**DEFENDANTS DON LORGE, TROY WOLBERSEN, AND DAN STARRY'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

In opposing Defendant County Sheriffs' motion for summary judgment, Plaintiffs assert that they do not need to meet the requirements of *Monell* because they are not bringing a § 1983 claim against the County Sheriffs as county actors, but instead as state actors. In making this argument, Plaintiffs ignore the objective of *Monell* and its progeny to hold local governments responsible only for their own unconstitutional policies. Instead, Plaintiffs ask the Court to apply an overly broad interpretation of *Ex parte Young*, which would effectively hold constitutionally liable any local government that

1

follows an allegedly unconstitutional state law. In presenting this position, Plaintiffs ask the court to ignore an entire body of applicable case law and to rely instead on two district court cases that are procedurally and factually distinct to find that *Monell* is inapplicable and the County Sheriffs are state actors. They further shortchange the analysis in *McMillian*, which, applied correctly, leaves no doubt that the County Sheriffs are county actors. Accepting Plaintiffs' arguments would wholly undermine the purpose of *Monell*, which is a fact Plaintiffs simply ignore, even though, under their theories, suing just three sheriffs in a state of 87 counties does not accomplish their stated end goal. Because Plaintiffs cannot properly escape the application of *Monell* and there is no unconstitutional County policy at issue in this case – a fact Plaintiffs admit – the County Sheriffs are entitled to summary judgment in this case.

I.  **PLAINTIFFS' RELIANCE ON *MINNESOTA RFL* AND *ST. JAMES* IS MISPLACED AND FAILS TO SUPPORT THEIR POSITION THAT THE COUNTY SHERIFFS ARE STATE ACTORS.**

Plaintiffs cite to *Minnesota RFL Republican Farmer Labor Caucus*, 19-CV-1949, 2020 WL 1333155 (D. Minn. Mar. 23, 2020), and *St. James v. City of Minneapolis*, 05-2348, 2006 WL 2591016 (D. Minn. June 13, 2006), for the assertion that they may bring a suit against the County Sheriffs as state actors and therefore need not satisfy *Monell*. This reliance is misplaced and ignores key distinctions from those cases that make them inapplicable to the undisputed facts before the Court in this here.

The issue before the court in the *Minnesota RFL Republican Farmer Labor Caucus* opinion cited by Plaintiffs was a Rule 12(b)(6) motion to dismiss that turned on whether those plaintiffs had brought a plausible claim for relief alleging violation of their

2

First Amendment rights against four county attorneys in their official capacities. *Minnesota RFL Republican Farmer Labor Caucus*, 2020 WL 1333154, at *1. The court specifically noted that there is no settled law as to whether a suit can be brought against a municipality whose only "policy or custom" is enforcing state law. *Id.* at *2. Based on the procedural posture of the case and the deferential "plausibility standard" for a Rule 12 motion, the court found that the plaintiffs had plead "passable" *Ex Parte Young* claims. *Id.* at *3. In support of this position, the court noted that the "[d]efendants do not seem to dispute—and certainly do not mount a serious opposition to the assertion—that they act as state officials when they prosecute violations of § 211B.02." *Id.* In *St. James v. City of Minneapolis* – which is another Rule 12(b)(6) motion to dismiss case – the county attorneys themselves asserted that they were state actors. Here, the County Sheriffs make no concession, much less any assertion, that they are state actors in this case – quite the contrary, in fact.

Additionally, the reliance on these two cases – both of which involved county attorneys, not county sheriffs – for a *McMillian* analysis misapplies that *McMillian* framework. As discussed in greater detail below, *McMillian* is a fact-specific inquiry based on the particular position in question and challenged conduct. There can be no doubt that county sheriffs and county attorneys are different positions with different responsibilities. *Compare* Minn. Stat. § 388.051 (duties of a county attorney), *with* Minn. Stat. § 387.04 (duties of a county sheriff). Importantly, the prosecutorial enforcement of a state law – and the associated prosecutorial discretion – is distinguishable from a county sheriff's ministerial responsibilities under Minnesota's carry framework, particularly as

they relate to the age restriction Plaintiffs challenge. Accordingly, *Minnesota RFL* and *St. James* have no place in the *McMillian* analysis.

More instructive here is the case law addressed in the County Sheriffs' initial memorandum in support of their motion for summary judgment (Doc. 53), which has considered the exact issue before the court here as to whether to treat county employees as state or county actors for purposes of applying *Monell* when the challenged policy originates with the state. For example, the Second Circuit has developed a body of case law applicable to the question of whether a county actor enforcing state laws is a state or county actor for purposes of *Monell*. Based on this framework, the Second Circuit has held that a "municipality cannot be held liable for simply choosing to enforce the entire Penal Law." *Vives v. City of New York*, 524 F.3d 346, 356 (2d Cir. 2008). Like the County Sheriffs here, in *Vives*, the City of New York asserted that it is "the State's enactment of [the challenged statute] that caused" the plaintiffs' purported constitutional violation. *Id.* at 350. Under the Second Circuit's test from *Vives*, a municipality will only become liable under § 1983 for enforcing state law when (1) the municipality had a meaningful choice as to whether it would enforce the state law and, if so, (2) the municipality adopted a discrete policy to enforce such law that represented a conscious choice by a municipal policymaker. *Id.* at 353.

A recent Second Circuit case, which specifically addressed possession of firearms, parses this standard further. In *Juzumas v. Nassau County*, the Second Circuit found that when a county required the plaintiff to surrender his longarms in accordance with a state law, it "was reasonably applying state law, not crafting its own independent firearm

4

surrender policy untethered to the Penal Law." *Juzumas v. Nassau Cnty.,* New York, 33 F.4th 681, 689 (2d Cir. 2022). In *Juzamas*, state law required that long guns "shall be removed and declared a nuisance" in the event they are not surrendered upon the suspension or revocation of that person's pistol license. *Id.* at 388 (quoting Penal Law § 400.00(11)(c)). The court found that "[t]he language following 'shall' in a statute is mandatory, not precatory" and that the "mandatory language ends our inquiry." *Id.* at 688-89 (quotation omitted). This is because the county had no "meaningful choice" as to whether to enforce the state statute and therefore summary judgment was proper. Like the statute at issue in *Jauzamas*, the County Sheriffs in Minnesota have no meaningful choice as to whether to enforce Section 624.714. They must do so. And the County Sheriffs have no policymaking role in enacting or enforcing the statute. They are therefore not proper parties to this suit.

  The analysis of this issue as set out by the Second Circuit is much more applicable, and therefore persuasive, than the conclusory statements in *Minnesota RFL* and *St. James* that, by their own admissions, county attorneys are state actors in some circumstances. Plaintiffs' reliance on *Minnesota RFL* and *St. James* as justification for disregarding *Monell* and instead applying an *Ex parte Young* analysis is unfounded. The County Sheriffs here plainly assert that they are county actors and there is no dispute that they have no meaningful choice over their ministerial role in enforcing Section 624.714. Simply put, this argument by Plaintiffs fails to support their threadbare position that the County Sheriffs are proper parties in this case.

## II.   PROPERLY APPLIED, THE *MCMILLIAN* TEST ESTABLISHES THAT THE COUNTY SHERIFFS ARE COUNTY ACTORS.

In an attempt to bolster their unfounded reliance on *Minnesota RFL* and *St. James*, Plaintiffs assert that *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781 (1997), supports their position that the County Sheriffs are state actors, rather than county actors, when acting in accordance with the requirements of Section 624.714. Giving short shrift to the analysis required by *McMillian*, Plaintiffs argue simply that the County Sheriffs are state actors because of the nature of Section 624.714 and because a limited number of other, non-sheriff county offices have been found to be state actors. Doc. 74, at 6-8. This is insufficient, under *McMillian*, to demonstrate that the County Sheriffs are state actors in this case.

In *McMillian*, the Supreme Court held that the determination of whether an Alabama sheriff was acting on behalf of the state or the county when he was acting in his law enforcement capacity was dependent on how state law treats the sheriff with respect to his law enforcement duties. *McMillian*, 520 U.S. at 785. Specifically, the Court explained that its inquiry is into the "the actual function of a government official, in a particular area." *McMillian,* 520 U.S. at 786. Plaintiffs have interpreted this directive to mean that the court must only examine the County Sheriffs' role in enforcing Statute 624.714. This is incompatible with the Supreme Court's actual analysis in *McMillian,* however, which examined the sheriff's general role as law enforcement. *Id.* at 787-93. Consistent with this, the court's analysis properly turns on Minnesota law and whether

the County Sheriffs act on behalf of the state or their respective county when acting in a law enforcement capacity.

In analyzing whether Alabama sheriffs were properly classified as county actors or state actors, the *McMillian* court studied several facets of state law that elevated the role of sheriffs beyond their counties, including: (1) that under the Alabama constitution sheriffs are members of the state executive branch; (2) that the Alabama Supreme Court had interpreted sheriffs to be members of the state government; and (3) that tort claims brought against sheriffs for their actions were suits not against the counties they represent, but instead Alabama. *Id.* at 788-89. In other words, Alabama law closely tethered sheriffs with the state. Applying these same considerations here, looking through the lens of Minnesota law, all weigh in favor of the County Sheriffs being county actors.

Specifically, unlike Alabama, in Minnesota sheriffs are not members of the executive branch. *Compare* Minn. Const. Art. V, Sec. 1 ("The executive department consists of a governor, lieutenant governor, secretary of state, auditor, and attorney general, who shall be chosen by the electors of the state."), *with* Ala. Const. Sec. 112 ("The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a *sheriff for each county*.") (emphasis added). And the Minnesota Supreme Court has unequivocally held that county sheriffs are county actors when acting in their law enforcement capacity, even when they enforce state law. *Walsh v. State*, 975 N.W.2d 118, 130 (Minn. 2022).

In fact, in *Walsh*, the Mille Lacs County Sheriff (who is also a defendant in this case) and County Attorney sought indemnification from the State of Minnesota for expenses and attorney fees defending a federal lawsuit brought by the Mille Lacs Band of Ojibwe. *Id.* at 119. That case turned on whether the county sheriff and attorney were "persons acting on behalf of the state in an official capacity, temporarily or permanently, with or without compensation." *Id.* at 123 (quoting Minn. Stat. § 3.732 subd. 1(2)). In analyzing this question, the Minnesota Supreme Court looked at factors very similar to *McMillian*, finding that Minnesota statutes "generally treat county sheriffs and county attorneys as *county* officials and employees." *Id.* at 125 (citing Minn. Stat. § 382.01) (emphasis in original). In reaching this conclusion, the court explained that "[m]ost important, county sheriffs and county attorneys are elected by residents of the county to serve the residents of the county." *Id.* (citing Minn. Stat. § 382.01). The court also noted that "county attorneys and county sheriffs report to the county board, not to any state agency or department," and that the county board sets their salaries and office budgets, with disputes over such issues subject to review by the district court. *Id.* at 126 (citing Minn. Stat. §§ 387.20, 388.18, .22).

The Minnesota Supreme Court even went on to highlight the ramifications of the arguments Plaintiffs now make. In response to an argument that county sheriffs and attorneys are acting on behalf of the state "because state statute directs them to enforce and prosecute criminal laws passed by the Legislature," the court found that under that theory, "the State would be required to defend and indemnify not only county attorneys and county sheriffs, but also every county (and city, school district, watershed board)

8

employee when those county employees, pursuant to legislative directive, are carrying out laws and obligations enacted by the Legislature." *Id.* at 127. The Court explained that it was "extremely reluctant" to conclude that this was consistent with the legislature's intent. *Id.*

If this court were to conclude that the County Sheriffs are state actors for the purpose of a § 1983 claim premised solely on a state mandate that the County Sheriffs take part in a state gun permitting scheme, this would undermine the Minnesota Supreme Court's ruling from less than four months ago. In both this case and the case before the Minnesota Supreme Court, the court is faced with the threshold question of whether mere enforcement of a state law means a county sheriff is acting as an agent of the state. The Minnesota Supreme Court has answered this question: it does not. This should put an end to the analysis, which *McMillian* says must be conducted pursuant to state law. To attempt to square a contrary ruling here with the ruling in *Walsh* would mean that the hat a Minnesota county sheriff wears for liability purposes – either a county actor hat or state actor hat – would change solely by nature of the legal claim itself, not the action or state law underlying that claim. This would be untenable.[1]

In a similar case to the one before this court, in *Dean v. Cnty. of Gage, Neb.*, the Eighth Circuit applied the *McMillian* analysis to determine whether county sheriffs in Nebraska are state or county actors. 807 F.3d 931 (8th Cir. 2015). Applying a more

---

[1] Notably, the County Sheriffs tendered defense of this action to the state, but have not received any response to that tender. *See* 2d Nierengarten Decl. ¶¶ 2-3.This further shows that the state does not view the County Sheriffs as state actors when merely enforcing allegedly unconstitutional state laws.

9

wholistic analysis of state law than Plaintiffs would like the court to apply here, in *Dean*, the Eighth Circuit found that county sheriffs in Nebraska are county actors, offering a direct corollary to the County Sheriffs in this matter. *Id.*

In *Dean*, the court explained that, unlike the Alabama state laws in *McMillian*, "the Nebraska constitution nor its statutes list sheriffs as members of its executive branch." *Id.* at 942. As discussed above, the same is true for Minnesota. *See* Minn. Const. Art. V, Sec. 1. The Eighth Circuit went on to explain that, unlike in Alabama where the State Supreme Court had authority to impeach sheriffs, "Nebraska district courts have authority to remove county officers, including sheriffs." *Id.* While, in Minnesota, the chief justice of the Minnesota Supreme Court has a role in the process for removing county sheriffs, a petition for removal first goes to the county auditor and any hearing on the petition is handled by a special master. *See* Minn. Stat. §§ 351.14-.23. The role the state's judicial branch has in this process is consistent with sheriffs' due process rights in their elected county positions and does not suggest state law is attempting to transform that county role into one as a state actor. Finally, in *Dean*, the court reasoned that, unlike in Alabama "'where tort claims brought against sheriffs based on their official acts . . . constitute suits against the State, not suits against the sheriff's county," the Nebraska Supreme Court holds counties liable for the negligent and intentional torts of its sheriff. *Dean*, 807 F.3d at 942. The same is true in Minnesota. *See, e.g.*, *Johnson v. Cnty. of Dakota*, 510 N.W.2d 237 (Minn. App. 1994) (plaintiffs brought suit against deputy sheriff, county sheriff, and Dakota County alleging multiple tort claims after officers wrongfully executed a search warrant on plaintiffs' home); *Elwood v. Rice Cnty.*, 423

N.W.2d 671 (Minn. 1988) (plaintiffs brought suit against two Rice County Deputy Sheriffs for multiple tort claims after the deputy sheriffs responded to a domestic dispute call at their home regarding their son).

The *Dean* court also looked at other factors supporting the conclusion that the county sheriffs "represent the county when acting in a law enforcement capacity." *Dean*, 807 F.3d at 842. For example, the Eighth Circuit noted state statutes establishing that the sheriff's salary is set by the county board, the county provides the sheriff's office with equipment, and registered voters elect the county sheriff. *Id.* All of those factors are present in Minnesota. *See* Minn. Stat. §§ 387.04, .20, 211. Applied correctly and in accordance with Eighth Circuit precedent, *McMillian* clearly supports the conclusion that Minnesota's county sheriffs – including the Defendant County Sheriffs in this case – are county actors when acting in a law enforcement capacity.

### III. PLAINTIFFS' CONTRADICTORY ARGUMENTS CANNOT BE RECONCILED WITH THE LAW AND ARE INSUFFICIENT TO WITHSTAND SUMMARY JUDGMENT.

Under Plaintiffs' proposed application of the law, any time a municipal employee follows a directive set by the state, the municipal employee is to be considered a state actor. Taking this approach would leave municipalities susceptible to § 1983 liability, via *Ex parte Young*, simply by nature of their role as an employer whose employees bear particular responsibilities under mandate from the state government. This runs directly counter to *Monell* and its progeny, which leaves no room for doubt that municipalities are only to be held liable under § 1983 for their own unconstitutional policies or customs enacted or adopted by the municipality's deliberate choice. *See, e.g.*, *City of St. Louis v.*

*Praprotnik,* 485 U.S. 112, 123 (1988) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). Sanctioning this workaround to escape the requirements of *Monell* and the protections afforded by that body of law to municipalities sued under § 1983 for allegedly unconstitutional acts or laws completely outside the municipalities' limited scope of authority could have a truly extraordinary impact on the structures and public coffers of the state's towns, cities, school districts, and counties.

Plaintiffs' remaining justifications for including the County Sheriffs in this matter are without merit. Plaintiffs argue they need to name the County Sheriffs in the lawsuit because they would not be granted permits without an order from the court enjoining the County Sheriffs from denying applications based on age.[2] Doc. 74, at 8-9. Notably, however, Plaintiffs failed to name the other 84 county sheriffs in Minnesota. Playing out Plaintiffs' logic further, if, as they claim, the County Sheriffs are necessary defendants for the relief requested, then it would follow that the county sheriffs in the other 84 counties can continue to deny applications to those under 21, even if the court grants Plaintiffs' relief requested, because those other sheriffs are not a party to this lawsuit. In other words, accepting Plaintiff's position, unless and until an 18- to 20-year-old from each other county in the state brings a § 1983 claim against their respective county

---

[2] Plaintiffs argue the County Sheriffs have pointed to no law "for the proposition that a state can evade review of unconstitutional laws by assigning enforcement of those laws to local rather than state officials," Doc. 74, at 9, but they fail to identify any law indicating that the state must identify a state actor for a plaintiff to sue. This hallow assertion suggests Plaintiffs expect the government – specifically, county governments – to do their work for them to identify the appropriate party to enjoin when they seek to challenge state law. The is not the Counties Sheriffs' job.

sheriff, that sheriff would be required under state law to comply with the age restriction in Section 624.714.

This reasoning further underscores the fatal flaws in Plaintiffs' assertion that the County Sheriffs are state actors here. Specifically, while simultaneously taking that position, Plaintiffs also contend that the County Sheriff from the respective county of each of the named plaintiffs is necessary for their relief. In essence, Plaintiffs are saying the County Sheriffs are state actors for purposes of sustaining a case against them, but county actors for purposes of the relief Plaintiffs seek. This is difficult to reconcile.

Of course, Plaintiffs understand that when a law is ruled unconstitutional, county sheriffs must comply with the ruling of the judicial branch. This a basic aspect of the separation of powers. Plaintiffs acknowledge that the County Sheriffs would not currently defy state law and grant a permit application to someone under 21. Doc. 74, at 11. It follows, too, that if the court grants the relief requested by Plaintiffs against the proper party to their claims – the State of Minnesota – the County Sheriffs would not deny on application based upon a provision that the judicial branch has ruled unconstitutional.

Regardless of Plaintiffs' attempts to muddy the issues, the law and facts here are clear. The County Sheriffs are county actors merely enforcing Section 624.714, the same way the County Sheriffs would enforce any other state law. The County Sheriffs and their county employers have not caused any constitutional harm to Plaintiffs as a result of any custom or policy adopted by their office. Plaintiffs and the County Sheriffs agree on this point. Doc. 74, at 6 ("Plaintiffs agree that they have not based their claims upon policies,

13

customs, or practices specific to the Sheriffs' counties."). Accordingly, *Monell* makes clear that Plaintiffs' § 1983 claims against the County Sheriffs fail.

## CONCLUSION

For the reasons set forth above and in the County Sheriff's initial memorandum in support of their motion for summary judgment (Doc. 53) and reply memorandum in opposition to Plaintiffs' motion for summary judgment (Doc. 76), along with the Second Amendment arguments set forth in Commissioner Harrington's summary judgment memoranda (including Doc. 49 and Doc. 72)[3] and the amicus briefs filed by Everytown for Gun Safety (Doc. 70) and the Gifford Law Center to Prevent Gun Violence (Doc. 71), the County Sheriffs respectfully request that the court grant the County Sheriffs' motion for summary judgment.

**RUPP, ANDERSON, SQUIRES,
WALDSPURGER & MACE, P.A.**

Dated: September 8, 2022

*/s/ Kristin C. Nierengarten*
Scott T. Anderson (#157405)
Kristin C. Nierengarten (#395224)
Zachary J. Cronen (#397420)
333 South Seventh Street, Suite 2800
Minneapolis, MN 55402
Phone: (612) 436-4300
Fax: (612) 436-4340
Email: scott.anderson@raswlaw.com
kristin.nierengarten@raswlaw.com
zachary.cronen@raswlaw.com

---

[3] The County Sheriffs further incorporate the state's arguments in Defendant Harrington's Reply Memorandum in Support of his Motion for Summary Judgment that the Plaintiffs' claims fail on Second Amendment grounds.