UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kristin Worth, Austin Dye, Axel Anderson, Minnesota Gun Owners Caucus, Second Amendment Foundation, and Firearms Policy Coalition, Inc., | Case No. 0:21-CV-01348 (KMM/LIB) |
| Plaintiffs, | **DEFENDANDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR STAY OF INJUNCTION** |
| vs. | |
| John Harrington, in his individual capacity and in his official capacity as Commissioner of the Minnesota Department of Public Safety, *et al.* | ***EXPEDITED HANDLING REQUESTED** |
| Defendants. | |

**INTRODUCTION**

Defendant Commissioner[1] of the Minnesota Department of Public Safety ("DPS"), submits the following memorandum in support of his motion for a Stay of Injunction pursuant to Fed. R. Civ. P. 62(d), for Relief from Order pursuant to Fed. R. Civ. P. 60(b)(6), and for emergency relief and expedited handling pursuant to Local Rule 7.1(d).[2]

Minnesota's statute limiting gun permits to people 21 or older has been in effect for twenty years. DPS's forms, processes, computer programs and databases have been built around that requirement. Today, this Court enjoined enforcement of that statute, effective

---

[1] Bob Jacobson was sworn in as the Commissioner of the Minnesota Department of Public Safety on January 3, 2023.
[2] Counsel for DPS contacted chambers by telephone and email on March 31, 2023 to obtain a hearing date and briefing schedule as required by local rule 7.1(d)(2) and will amend DPS' Notice of Hearing when a date is provided.

1

immediately. But those longstanding processes and programs cannot be replaced overnight. Further, DPS is considering an appeal, which counsels in favor of maintaining the status quo. Therefore, DPS asks this court for:

1) emergency relief from today's order while this motion is being considered; and either
2) A stay of the order pending appeal, or in the alternative, a stay for 60 days to allow for its orderly implementation.

Other courts who have ruled on the same legal issue (the Second Amendment rights of 18-to-20-year-olds) have stayed their injunctions pending appeal. *E.g., Miller v. Bonta*, 542 F. Supp. 3d 1009, 1069 (S.D. Cal. 2021); *see also Firearms Pol'y Coal., Inc. v. McCraw*, No. 4:21-CV-1245-P, 2022 WL 3656996, at *12 (N.D. Tex. Aug. 25, 2022).

## ARGUMENT

**I.   THE ORDER SHOULD BE STAYED PENDING APPEAL PURSUANT TO FED. R. CIV. P. 62(d).**

Federal Rule of Civil Procedure 62(a) provides an automatic stay upon a judgment's execution for thirty days. Fed. R. Civ. P. 62(a). For a final judgment that grants an injunction, however, there is no automatic stay. *Id*. The Court may exercise its discretion to "suspend [or] modify" an injunction pending appeal if it provides "terms that secure the opposing party's rights." *Id*. at 62(d). The relevant factors in determining if a court should stay an injunction pending appeal are: (1) whether the party against whom the injunction was granted made a strong showing of a likelihood of success on the merits; (2) whether the party against whom the injunction was granted will be irreparably injured absent a stay; (3) whether a stay will substantially injure the other parties' interests; and (4) where the public interest lies. *In re Workers' Compensation Refund,* 851 F. Supp. 1399, 1401 (D.

Minn. 1994) (citing *Hilton v. Braunskill,* 481 U.S. 770 (1987); *see also Hunt v. Bankers Tr. Co.*, 799 F.2d 1060, 1067 (5th Cir. 1986); 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2904 (3d ed.). Despite these clearcut factors, the decision to issue a stay pending appeal "contemplate[s] individualized judgments in each case," and it "cannot be reduced to a set of rigid factors." *Hilton*, 481 U.S. at 777.

All four factors weigh in favor of granting a stay of the injunction. In considering the first factor, the likelihood of success on the merits, the focus is not necessarily on whether the applicant has shown a likelihood that its appeal will be successful, although this is relevant, but whether the order involves the determination of substantial and novel legal questions. *In re Workers' Compensation Refund,* 851 F. Supp. at 1401. The rights of 18-to-20-year-olds to carry firearms outside the home under the Second and Fourteenth Amendments is an issue of first impression in this district and one which is simultaneously being decided differently by both district and circuit courts of appeal throughout the country. The issue will likely be determined by the Supreme Court, and therefore certainly involves the determination of both substantial and novel legal questions. A stay would be in accord with other district courts who have ruled on the very issues in this case. "Because this case involves serious questions going to the merits, a temporary stay is in the public interest." *Miller v. Bonta*, 542 F. Supp. 3d 1009, 1069 (S.D. Cal. 2021), *vacated and remanded*, No. 21-55608, 2022 WL 3095986 (9th Cir. Aug. 1, 2022); *see also Firearms Pol'y Coal., Inc. v. McCraw*, No. 4:21-CV-1245-P, 2022 WL 3656996, at *12 (N.D. Tex. Aug. 25, 2022).

As to the second factor, whether the party against whom the injunction was granted will be irreparably injured absent a stay, DPS has multiple injuries absent a stay. First, any time a statute is enjoined, the state suffers the irreparable harm of denying the public the enforcement of its duly-enacted laws. Minnesota also has an interest in the full adjudication of this issue before it issues potentially invalid permits. If this decision were overruled, there would be innumerable young people with guns, whose permits were no longer valid. Minnesota's interest merges with that of the public.

The immediate harm to DPS, however, is practical. DPS requires time to evaluate and responsibly implement the order. For example, it must analyze other relevant statutes to ensure that it is complying with both the order and any other laws relating to the permit-to-carry process. Reciprocity forms must be amended, the list of states whose laws are not similar to Minnesota's must be amended, databases must be built for collecting data to track these new permits, and computers and system programming needs to be completed to ensure that DPS does not run afoul of those requirements. *See* Minn. Stat. § 624.714, subds. 15, 16(a), 16(c), 16(d). In addition, similar changes need to be made at multiple levels of government. Local law enforcement needs to be briefed on the order as well as every change that must be made in their processes to ensure uniform and streamlined permitting processes.

On the other hand, sheriffs are required to issue permits within 30 days of receipt of applications. Minn. Stat. § 624.714, subd. 6(a). If applications are received before the processes are updated, then DPS would be faced with the choice of either violating the 30-day timeline or essentially flying by the seat of its pants. A stay would alleviate the

practical impossibilities in implementing the injunction immediately. *See Solutran, Inc. v. U.S. Bancorp & Elavon, Inc.*, No. 13-CV-02637-SRN/BRT, 2018 WL 6681748, at *3 (D. Minn. Dec. 19, 2018) (granting a motion to stay an injunction in part because the court recognized the challenge faced with sooner implementation of the injunction).

As to the third factor, whether a stay will substantially injure the other parties' interests, to the contrary, a stay will preserve the interests of Plaintiffs. A stay would moderate the potential negative effects of relying on the injunction while it is subject to appellate review and potential reversal. If Plaintiffs immediately obtained permits to carry and publicly carried their firearms while the injunction was pending, Plaintiffs would be subject to criminal liability, the very thing they sought to avoid, if the statute is found constitutional on appeal. A stay preserves the status quo until the issue is fully and finally adjudicated by the Eighth Circuit and ultimately the Supreme Court.

The fourth factor, where the public interest lies, also weighs in favor of a stay. The injunction concerns novel issues that are likely to be reviewed by the Eighth Circuit, and on which the federal circuits are split. As a result, maintaining the status quo will also improve public confidence in the judicial system. Such confidence in the validity and finality of court orders would be undermined if the injunction were reversed on appeal and all affected new permit holders suddenly had invalid permits and were no longer able to carry. Second, the public interest is best served by an orderly implementation of this significant change to state law. As stated previously, several other requirements in state law are affected by the injunction and the public interest is best served if DPS can ensure uniform, safe, and correct implementation of the change to Minnesota's permitting scheme.

As all four factors weigh in favor of granting a stay pending appeal, a stay of the injunction pursuant to Fed. R. Civ. P. 62(d) is proper.

## II. DEFENDANTS SHOULD BE GRANTED RELIEF FROM THE MARCH 31, 2023 ORDER PURSUANT TO FED. R. CIV. P. 60(b)(6).

In addition to Rule 62, Fed. R. Civ. P. 60(b)(6) empowers the court, on motion and just terms, to relieve a party from a final judgment, order, or proceeding for any other reason justifying relief from the operation of the judgment. Relief from the portion of the order which immediately enjoins Defendants from enforcing Minn. Stat. § 624.714, subd. 1(a) and § 624.714, subd. 2(b)(2) is necessary.

Such a motion may be granted only in "extraordinary circumstances." *Raymond v. United States*, 933 F.3d 988, 991 (8th Cir. 2019) (citation and quotation marks omitted). In determining whether there are extraordinary circumstances, courts "may consider a wide range of factors" including "the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." *Buck v. Davis*, 137 S. Ct. 759, 778 (2017) (citation and quotation marks omitted). In addition, a "precondition" of Rule 60(b)(6) relief is a "good claim or defense." *Id.* at 780 (citation and quotation marks omitted). Time is relevant because the longer the delay, "the more intrusive is the effort to upset the finality of the judgment.'" *Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 977 F. Supp. 2d 944, 951 (D. Minn. 2013), *rev'd and remanded sub nom. City of Duluth v. Fond du Lac Band of Lake Superior Chippewa,* 785 F.3d 1207 (8th Cir. 2015).

Here, the requisite extraordinary circumstances exist. This case concerns a matter of impression in this district, and a matter which is pending throughout the country in both

6

the district courts and circuit courts of appeal. Courts are not uniformly determining the outcome of this issue and there is a possibility of reversal on appeal. DPS and Defendants have a strong defense to Plaintiffs' claims as others around the country have prevailed on the same issue. There is a risk of undermining public confidence in the legal process if 18-to-20-year-olds throughout Minnesota obtain firearms and the permits to carry them in reliance on the March 31, 2023 Order, and it is reversed on appeal, making their permits invalid. DPS has moved quickly to stay the injunction, judgment has not yet been entered, and any potential impact has been minimized as much as possible. For these reasons, relief from the injunction pursuant to Fed. R. Civ. P. 60(d)(6) is warranted.

## CONCLUSION

For the aforementioned reasons, the DPS respectfully requests the Court: 1) grant an emergency stay of its March 31, 2023 Order while this motion is being considered; and 2) either stay the Order during the pendency of any appeal, or at a minimum stay it for 60 days so that it can be responsibly implemented.

Dated: March 31, 2023

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

s/ Amanda E. Prutzman
Amanda E. Prutzman
Assistant Attorney General
Atty. Reg. No. 0389267

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1217 (Voice)

(651) 282-5832 (Fax)
amanda.prutzman@ag.state.mn.us

ATTORNEY FOR DEFENDANT
COMMISSIONER JOHN HARRINGTON

|#5467344-v1