UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KRISTIN WORTH, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil No. 21-1348 ) |
| JOHN HARRINGTON, in his individual capacity and in his official capacity as Commissioner of the Minnesota Department of Public Safety, *et al.*, | ) Judge Katherine M. Menendez ) Magistrate Judge Leo I. Brisbois ) ) **OPPOSITION TO** ) **DEFENDANTS' MOTION FOR** ) **STAY OF INJUNCTION** |
| Defendants. | ) |

## INTRODUCTION

This Court granted Plaintiffs' motion for summary judgment on March 31, 2023, finding that Minnesota's exclusion of 18-to-20-year-old adults from the State's carry permitting system violated the Second and Fourteenth Amendments, and enjoining the Defendants from enforcing the 21-year minimum age requirement contained in Minn. Stat. § 624.714, subd. 2(b)(2). *See* Order, Doc. 84 (March 31, 2023). Later that day, the State moved to stay the injunction or, in the alternative, obtain relief from the Court's judgment. The Court should deny both requests.

## ARGUMENT

**I.  The Court Should Not Stay Its Order Pending Appeal.**

The State seeks an order from this Court staying its injunction pending appeal. *See* Def.'s Mem. of Law in Supp. of Mot. for Stay of Inj. at 1, Doc. 87 (Mar. 31, 2023) ("State Br."). The Sheriff Defendants have weighed in to support the State's motion. *See* Ltr. re

1

Mot. to Stay, Doc. 90 (Apr. 3, 2023) ("Sheriffs Ltr."). The Court should deny that motion. In determining whether a stay is appropriate, courts weigh four factors: (1) whether the party against whom the injunction was granted made a strong showing of a likelihood of success on the merits; (2) whether the party against whom the injunction was granted will be irreparably injured absent a stay; (3) whether a stay will substantially injure the other parties' interests; and (4) where the public interest lies. *In re Workers' Compensation Refund*, 851 F. Supp. 1399, 1401 (D. Minn. 1994).

The State is wrong to claim that any of these factors favor a stay, much less all of them. As to likelihood of success, the Court's order granting summary judgment in Plaintiffs' favor lays out in great detail why Plaintiffs' *must* win under the Supreme Court's recent decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). The State does not offer any argument against that decision or attempt to persuade the Court that it erred in any part of its opinion, but instead insists that this factor is satisfied by default because the case "involves the determination of both substantial and novel legal questions." State Br. at 3. There is no such rule. If "the equities are otherwise strongly in [the movant's] favor, the showing of success on the merits can be less," but there must still be some showing (and as discussed below, the equities do not help the State lower this standard here). *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981) (discussing preliminary injunctions); *see Nebraska v. Biden*, 52 F.4th 1044, 1046 (8th Cir. 2022) (noting preliminary injunction standard and stay pending appeal standard are the same). For example, in *Nebraska v. Biden*, the Eighth Circuit entered a stay pending appeal *both* because it involved "substantial questions of law which remain to be resolved" *and*

2

because "the equities strongly favor an injunction considering the irreversible impact the Secretary's debt forgiveness action would have." 52 F.4th at 1047 (quotation omitted). There is, simply, no rule that if a novel legal question is presented, a district court should stay its injunction. The State cannot satisfy even the more lenient formulation of this standard and, in any event, the bar for success on the merits should be high, since the other factors decisively favor plaintiffs.

The second and third factors compare the harm to the moving party of imposing the injunction against the harm to the winning party of withholding the injunction. There will be no harm to the State by permitting the injunction to go into effect. The State claims that "denying the public the enforcement of its duly-enacted laws" constitutes "irreparable harm," State Br. at 4, but as this Court found, the Minnesota law preventing 18-to-20-year-olds from acquiring a carry license is unconstitutional. "An unconstitutional act is not a law; it confers no rights; it imposes no duties . . . it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby Cnty., Tenn.*, 118 U.S. 425, 442 (1886); *see also Collins v. Yellen*, 1789 (2021) ("[A]n unconstitutional provision is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment.)"). There is no irreparable harm in enjoining an unconstitutional statute.

Next, the State raises the concern that, if this Court's injunction is not stayed and 18-to-20-year-old Minnesotans acquire carry licenses and then the Eighth Circuit reverses, there will be "innumerable young people with guns, whose permits [are] no longer valid." State Br. at 4. The State considers this factor to weigh in favor of a stay to preserve its own

3

interests, *id.*, and, because it could lead to criminal liability for Plaintiffs, in the Plaintiffs' best interest as well, *id.* at 5. This concern is unfounded, as the Sheriffs implicitly acknowledge in their letter to the Court. Sheriffs Ltr. at 2 ("This may not be a matter of settled law.") If this Court enters final judgment in Plaintiffs' favor, and Plaintiffs acquire permits, then *even if* the Eighth Circuit reverses and finds Minnesota's age restriction is constitutional—a result that Plaintiffs stress they view as very unlikely in the first place—that would not, in and of itself, undermine the validity of the permits issued to any 18-to-20-year-old Minnesotans who had acquired them in the meantime. Under Minn. Stat. § 624.714 subd. 1(a), if a person has a permit to carry a pistol, then it is not unlawful for them to carry that pistol on their person in a public place. The age restriction, which the Court enjoined here, does not separately make it unlawful to carry a handgun in public, but merely restricts who may *acquire* permits. Minn. Stat. § 624.714, subd. 2. If Plaintiffs acquire permits, they will remain valid unless and until they are revoked. An order reversing this Court's decision would not, on its own terms, criminalize any conduct by the Plaintiffs or other 18-to-20-year-olds who are granted licenses by Minnesota.

    The State also raises "practical" concerns with immediately implementing this Court's order. These are overstated. Indeed, the State has gone from arguing that the Department of Public Safety's role in implementing the challenged law is so attenuated as to deprive Plaintiffs of standing to now arguing that the burden of complying with the injunction requires staying the judgment. And at a minimum none of the State's timing objections justify staying the judgment against the Sheriffs. While an injunction against both the State and the Sheriff Defendants will afford complete relief, at a minimum the

4

injunction should immediately require the Sheriff Defendants to begin processing applications from those 18 and up notwithstanding the age limitation.

In any event, the State's objections fail on their own terms. The State notes that it must (1) amend forms and its list of states with reciprocal status in Minnesota, (2) analyze other relevant statutes to ensure compliance, (3) build databases for collecting data to track permits, (4) complete "computers and system programming" to ensure that it tracks permits that have been granted, and (5) brief local law enforcement charged with processing applications. State Br. at 4–5. The Sheriffs also suggest the State must be given time to update its forms before they can be expected to review applications to avoid "inconsistencies" in administration of the carry licensing program. Sheriffs Ltr. 1. It is not clear why most of these will take *any* time to implement—the State is already required to maintain records tracking the individuals who possess permits to carry, Minn. Stat. 624.714, subd. 15, and there is no need to treat 18-to-20-year-olds differently under the Court's order or build a special database for them, they just need to be included in the existing database as their applications are reviewed and approved. And there are no other statutes to "review" for compliance here. By its terms, Minn. Stat. 624.714 "sets forth the complete and exclusive criteria and procedures for the issuance of permits to carry and establishes their nature and scope." *Id.*, subd. 23. As to the "briefing" the State must give to local law enforcement regarding this Court's ruling, it is straightforward. The State could send a letter to all sheriffs in the state *today* informing them that, as a result of this Court's order, they should continue reviewing applications in the same way as before *except* that they should grant the applications of any otherwise-qualified applicants who are 18, 19, or

5

20 years old. The State would hardly be "flying by the seat of its pants" to help sheriffs meet the 30-day statutory deadline if it issued this straightforward instruction. The only tasks the State identifies that may indeed take some time to implement are updating its forms and its list of reciprocal states, but with adequate instruction, there is no reason sheriffs cannot use the existing forms to process 18-to-20-year-old applicants until the new forms are ready. And as for its reciprocity obligations, the statute already calls for the reciprocal list to be revised "annually." *Id.*, subd. 16. While Plaintiffs are of course happy that the State is eager to account for the injunction and recognize additional reciprocal states outside its ordinary process, that is no reason to modify the Court's injunction in this case, especially since updates to the reciprocal state list is not critical to beginning the process of reviewing new applications now.

Starting the process of reviewing new applications as soon as possible is crucial because of the harm faced by Plaintiffs and other 18-to-20-year-olds by not immediately implementing this Court's decision is significant. The right to bear arms protected by the Second Amendment is "among those fundamental rights necessary to our system of ordered liberty," *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010) and it is to be treated the same way as other Bill of Rights guarantees, *Bruen*, 142 S. Ct. at 2156. In the First Amendment context, the Supreme Court has been very clear; the loss of a constitutional right, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Second Amendment is no different. *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (noting that "[t]he Second Amendment protects similarly intangible and unquantifiable interests" to the First

6

Amendment). In this case, it is particularly important to allow the injunction to take immediate effect, because Plaintiffs' challenge is based on their age. While all three individual Plaintiffs were under 21 when this case was filed and when it was argued last year, today only Kristin Worth remains young enough to benefit from the Court's ruling. If the injunction is stayed pending appeal, it is likely that *none* of the original individual plaintiffs in this case will benefit from the Court's ruling (though of course, the other 18-to-20-year-old Minnesotan members of the three organizational plaintiffs could still benefit).

The fourth and final factor favors Plaintiffs because "it is always in the public interest to protect constitutional rights." *Carson v. Simon*, 978 F.3d 1051, 1061 (8th Cir. 2020) (citation omitted). The State's two arguments to the contrary do not hold up. As explained above, the "orderly implementation" of the Court's order, State Br. at 5, does not require a great deal of time; the State is already processing carry applications, it merely needs to expand the group of people whose applications will be considered. That can be done immediately. And "public confidence in the judicial system" will not be improved by a stay. *See id.* It is the normal and ordinary process for decisions of district courts to be reviewed by appellate courts, and that necessarily entails some risk of reversal. Public confidence is not shaken by the ordinary process—but it might well be shaken by exceptions made in highly controversial constitutional cases like this one. If injunctions entered by a district court are permitted to remain in place pending appeal in ordinary civil cases regarding things like contract performance, they should not be denied to victorious

7

parties when constitutional rights are at stake. Such a double standard would create the very problem the State claims to be avoiding by making its motion.

No factor weighs in favor of granting a stay, and this Court should deny the State's motion under Rule 62(d).

## II. The Court Should Not Grant Relief From Its Order Under Rule 60.

Under Federal Rule of Civil Procedure 60(b)(6), this Court may grant relief "From a Final Judgment, Order, or Proceeding . . . for . . . any . . . reason that justifies relief." But this rule does not provide an avenue for this Court to grant the relief the State seeks. "Relief is available under Rule 60(b)(6) only where exceptional circumstances prevented the moving party from seeking redress through the usual channels." *Atkinson v. Prudential Prop. Co., Inc.*, 43 F.3d 367, 373 (8th Cir. 1994) (citations and quotations omitted). Here, the State has the opportunity to appeal this Court's decision and obtain redress that way, so relief under Rule 60(b)(6) is unnecessary. *See United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737, 743 (8th Cir. 2014) ("Rule 60(b) was not intended as a substitute for a direct appeal from an erroneous judgment. Thus, the proper recourse when the government disagreed with the district court's interpretation . . . was a direct appeal, not a Rule 60(b) motion.") (citations and quotations omitted). Tellingly, two of the three cases the State cites discussing the standard for granting this unusual relief arise in the habeas context where ordinary appeal rights do not exist. *See Buck v. Davis*, 137 S. Ct. 759 (2017); *Raymond v. United States*, 933 F.3d 988 (8th Cir. 2019). For the same reasons that a stay is inappropriate, the State's argument that this exceptional relief is necessary to maintain public confidence in the judiciary should be rejected.

## CONCLUSION

The Court should deny the State's motion and enter final judgment in Plaintiffs' favor.

Dated: April 5, 2023                                  Respectfully submitted,

                                                      /s/David H. Thompson
Blair W. Nelson                                       David H. Thompson*
Minnesota Bar No. 0237309                             DC Bar No. 450503
                                                      Peter A. Patterson*
BLAIR W. NELSON, LTD.                                 DC Bar No. 998668
205 7th Street N.W. Suite 3                           William V. Bergstrom*
Bemidji, MN 56601                                     DC Bar No. 241500
(218) 444-4531
bwnelson@paulbunyan.net                               COOPER & KIRK, PLLC
                                                      1523 New Hampshire Avenue, N.W.
                                                      Washington, D.C. 20036
                                                      (202) 220-9600
                                                      (202) 220-9601 (fax)
                                                      dthompson@cooperkirk.com
                                                      ppatterson@cooperkirk.com
                                                      wbergstrom@cooperkirk.com
                                                      *Admitted *pro hac vice*

                        *Attorneys for Plaintiffs*