UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kristin Worth, Austin Dye, Axel Anderson, Minnesota Gun Owners Caucus, Second Amendment Foundation, Firearms Policy Coalition, Inc., | Case No. 21-cv-1348 (KMM/LIB) |
| Plaintiffs, | |
| v. | |
| Bob Jacobson, *in his official capacity Commissioner of the Minnesota Department of Public Safety*; Kyle Burton, *in his official capacity as Sheriff of Mille Lacs County, Minnesota*; Troy Wolbersen, *in his official capacity as Sheriff of Douglas County, Minnesota*; and Dan Starry, *in his official capacity as Sheriff of Washington County, Minnesota*; | **ORDER** |
| Defendants. | |

On March 31, 2023, this Court granted in part the Plaintiffs' motion for summary judgment and found that Plaintiffs were entitled to declaratory and injunctive relief. The Commissioner of the Minnesota Department of Public Safety ("DPS"),[1] filed an emergency motion pursuant to Federal Rules of Civil Procedure 62(d) and 60(b)(6) asking the Court to stay the portion of its March 31st Order granting injunctive relief. [Doc. 85.] The Court

---

[1] When this case was filed, John Harrington was the Commissioner of DPS and Don Lorge was the Sheriff of Mille Lacs County. However, Bob Jacobson was sworn in as the Commissioner of DPS on January 3, 2023, and Kyle Burton is now the Mille Lacs County Sheriff. Under Fed. R. Civ. P. 25(d), Mr. Jacobson and Mr. Burton are automatically substituted as parties.

1

directed the Clerk to delay entry of final judgment pending resolution of the Commissioner's motion and entered a Briefing Order. The Court held a hearing by videoconference on April 10, 2023. For the reasons discussed below, the Commissioner's motion is granted.

## I.     Background

Plaintiffs are three Minnesota citizens between the ages of 18 and 21 years old who wish to carry handguns in public for the purpose of self-defense, and three organizations with members in the same age group who also seek the ability to publicly carry handguns. The State of Minnesota requires a permit for a person to lawfully carry a handgun in public; carrying a handgun without such a permit is a gross misdemeanor. Minn. Stat. § 624.714, subd. 1a. However, under Minn. Stat. § 624.714, subd. 2(b)(2), a person must be at least 21 years old to be eligible to receive a carry permit. Plaintiffs filed this suit alleging that the age requirement in Minnesota's permit-to-carry law violates their right to keep and bear arms guaranteed by the Second and Fourteenth Amendments of the United States Constitution.

Just over a year after Plaintiffs filed their Complaint, the Supreme Court decided *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S. Ct. 2111 (2022), which established a new test for evaluating Second Amendment claims. Ultimately, this Court found that under *Bruen*, Plaintiffs were entitled to summary judgment on their Second Amendment claims. As a result, the Court declared that Minn. Stat. § 624.714, subd. 2(b)(2)'s requirement that a person must be at least 21 years of age to receive a carry permit violates the rights of otherwise-qualified 18-to-20 year olds to keep and bear arms protected

by the Second and Fourteenth Amendments. Further, the Court enjoined Defendants from enforcing the 21-year minimum-age requirement in that statutory subdivision against the individual Plaintiffs and otherwise-qualified 18-to-20-year-olds. It is that injunction from which the Commissioner now seeks temporary relief.

## II.   Discussion

### *Fed. R. Civ. P. 62(d)*

Unlike final orders granting monetary relief, when a court enters a "final judgment in an action for an injunction," the proceedings are not automatically stayed. Fed. R. Civ. P. 62(c)(1). Nevertheless, Rule 62(d) allows a district court to "suspend" or "modify" an injunction on "terms that secure the opposing party's rights" pending appeal. Fed. R. Civ. P. 62(d). Courts deciding whether to stay an injunction pending appeal consider factors that are similar to those that govern requests for a preliminary injunction. *Rud v. Johnston*, Civil No. 23-0486 (JRT/LIB), 2023 WL 2760533, at *2 (D. Minn. Apr. 3, 2023). "The Court balances: (1) the likelihood that the stay applicant will succeed on the merits of its appeal; (2) whether the denial of a stay will irreparably harm the moving party; (3) whether issuance of a stay will substantially injure the non-moving party; and (4) the public interest." *Id.* The first two factors—likelihood of success on the merits and irreparable harm—are considered "the most critical," but the court must ultimately balance all four cnosiderations in determining whether a stay is appropriate. *See Jensen v. Minn. Dep't of Human Servs.*, Civil No. 09-1775 (DWF/BRT), 2020 WL 1130671, at *2 (D. Minn. Mar. 9, 2020). The court's assessment must focus on the circumstances of each case and "cannot be reduced to a set of rigid rules." *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987).

Having considered the parties' positions and the factors governing the Commissioner's request, the Court concludes that it is appropriate to enter a stay for a period of 30 days to allow the Commissioner to implement the Court's March 31st Order, or if the Commissioner files an appeal, until the appellate process is concluded.

*Likelihood of Success*

The Court finds that the first factor—likelihood of success of the merits of an appeal—weighs in favor of a entering a stay. The Court thoroughly discussed its view of the merits of this dispute in its Order granting in part the Plaintiffs' motion for summary judgment. Plaintiffs naturally suggest that the Commissioner is unlikely to succeed on the merits of any appeal because they agree with the conclusions reached in that Order. But one need only read the March 31st Order closely to see that this area of law is far from settled and the questions presented by this dispute are open to differing conclusions. Reasonable minds can easily disagree about several aspects of the analysis.

First, another court could very well agree with the Commissioner's position that "the people" to whom the Second Amendment refers did not extend historically to those whom the law considered minors or "infants." The Eighth Circuit has not definitively spoken on the precise issue presented by this case, but it is worth noting that it has recently interpreted some of its pre-*Bruen* precedent as having been undisturbed by *Bruen* and having placed a limitation on the scope of "'the people' to whom the protections of the Second Amendment extend." *United States v. Sitladeen*, --- F.4th ---, 2023 WL 2765015, at *5 (8th Cir. Apr. 4, 2023) (discussing the holding in *United States v. Flores*, 663 F.3d

4

1022 (8th Cir. 2011) that the Second Amendment does not apply to unlawfully present aliens).

In addition, the Court notes that under *Bruen*, discerning whether a law qualifies as a relevantly similar historical analog that might justify a regulation of the right to public carry is not a straightforward endeavor. At least one other court found that this reality weighed in favor of staying an injunction under nearly identical circumstances. *See also Firearms Policy Coalition, Inc. v. McCraw*, No. 4:21-cv-1245-P, --- F. Supp. 3d ---, 2022 WL 3656996, at *12 (N.D. Tex. Aug. 25, 2022) (finding that if Texas appealed a judgment determining that a similar age requirement for a permit to carry a handgun was unconstitutional it had a likelihood of success on the merits even though the issue was the only factor that presented a "close call").

Third, as the Court noted in its March 31st Order, *Bruen* left open a critical doctrinal question concerning the proper historical lens for lower courts to consider when looking for possible historical analogues to justify a modern firearm regulation—the time when the Second Amendment was ratified, or when the Fourteenth Amendment was adopted, making the majority of the Bill of Rights applicable to the States. 142 S. Ct. at 2137–38. At least one Circuit Court of Appeals has found that the focus of that lens should be at a point in history—the period around adoption of the Fourteenth Amendment in 1868— when there was certainly a greater degree of firearm regulation that affected persons under the age of 21. *Nat'l Rifle Assoc. v. Bondi*, 61 F.4th 1317, 1322–24 (3rd Cir. 2023). It takes no great leap to conclude that once this case is appealed, the Eighth Circuit could view this issue differently than this Court did in its March 31st Order, agree with *Bondi*, and view

5

the historical analogues from the later period as sufficiently similar to uphold the constitutionality of Minnesota's age requirement.

Finally, the significance of the issues presented and the rapid development of this area of law also tip this factor in the Commissioner's favor. *In re Workers' Compensation Refund*, 851 F. Supp. 1399, 1401 (D. Minn. 1994) (finding that the likelihood-of-success factor supported a stay where the order involved resolution of "substantial and novel legal questions" (quoting *Sweeney v. Bond*, 519 F. Supp. 124, 133 (E.D. Mo. 1981)); *Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin Cnty*, 927 F. Supp. 348, 351 (D. Minn. 1996) ("[N]otwithstanding the fact that the court believes its decision to be firmly grounded upon Supreme Court precedent, the court realizes that its order is one of first impression within a very controversial area; a fact which suggests that it presents a novel and substantial question sufficient to weigh in favor of granting a stay of its permanent injunction."); *see also* 11 Charles Alan Wright, et al., *Fed. Prac. & Proc.* § 2904 & n.13 (3d ed.) ("Many courts also take into account that the case raises substantial, difficult or novel legal issues meriting a stay." (collecting cases)). Accordingly, this Court concludes that, although it stand by the reasoning and conclusions of its Order, the above considerations related to the likelihood-of-success factor support entry of a stay of the injunction pending resolution of an appeal.

### *Balance of Harms*

Balancing the remaining factors together with the first, the Court finds that the injunction should be stayed pending resolution of the appeal. The second and fourth factors favor entry of a stay. Specifically, the Court finds that failing to enter a stay will irreparably

harm the Commissioner and DPS and that entry of the stay will be in the public interest. *See McCraw*, 2022 WL 3656996, at *12 (indicating that the state's harm and the public interest merge). The entry of the injunction imposed by the March 31st Order will prevent a statute passed by the elected representatives of Minnesota citizens from being enforced. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, Circuit Justice) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury" (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers))); *McCraw*, 2022 WL 3656996, at *12. Plaintiffs argue that this factor cannot weigh in favor of a stay because this Court has declared the age restriction unconstitutional, and an unconstitutional law was never really duly enacted by the elected representatives of a state and they have no interest in its enforcement.[2] True, the Eighth Circuit has indicated that "it is in the public interest to uphold the will of the people, as expressed by the acts of the state legislature, when such acts appear harmonious with the Constitution." *Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905, 909 (8th Cir. 2020) (citing *King*, 567 U.S. at 1303). But, contrary to

---

[2] The cases from which Plaintiffs draw the eloquent quotations to support this position do not address the propriety of entering a stay. *Norton v. Shelby County*, 118 U.S. 425, 442 (1886) ("An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."); *Collins v. Yellen*, 141 S. Ct. 1761, 1788–89 (2021) ("Although an unconstitutional provision is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment), it is still possible for an unconstitutional provision to inflict compensable harm.").

7

Plaintiffs' argument, there is a sufficient debate about the merits in this case and the substantial, difficult, and novel legal issues raised support entry of the stay.

In addition, the Court is persuaded that the failure to enter a stay will have the potential to create unnecessary problems if the Court's March 31st Order is overturned on appeal. If no stay is entered, various county sheriffs will likely begin issuing permits to individuals between 18 and 21 years old while the Defendants' appeal is pending. If this Court's decision were later overturned on appeal, the parties do not agree and point to no definitive authority to resolve the question of what legal effect that would have on any permits issued to 18-to-20-year-olds in the interim. Plaintiffs, of course, take the position that anyone with a permit would still be lawfully able to carry a handgun in public. Defendants suggest that the 18-to-20-year-olds who received those permits could be in possession of carry permits that would potentially be rendered legally invalid, either automatically or through a subsequent revocation process.[3] If the permits were automatically rendered invalid, and the holders were to carry handguns in the mistaken belief that they were authorized to do so, they could be unsuspectingly subject to criminal liability. *See McCraw*, 2022 WL 3656996, at *12. If such permits would only be rendered invalid after completion of a revocation process, this could force local authorities to incur the expense of defending against the legal challenges that would almost certainly be raised

---

[3] Under Minn. Stat. § 624.714, subd. 8(a), a permit is "void at the time that the holder becomes prohibited by law from possessing a firearm," and the permit holder has five days to return the permit card to the sheriff. Otherwise, a person aggrieved by revocation of a permit may initiate a state district court proceeding in which the sheriff is required to show, by clear and convincing evidence, the basis for the revocation. *Id.* § 624.714, subd. 12(a)–(b).

by those whose licenses were being revoked. Plaintiffs' counsel suggested at oral argument that if the Eighth Circuit Court of Appeals were to reverse this Court's March 31st Order, then Plaintiffs would not object to any revocation of their permits. But that ignores the obvious reality that Plaintiffs' counsel cannot commit to such a waiver for any individuals who are not themselves parties to this action. Given these considerations, the Court finds the second factor weighs in favor of granting a stay.

Stated plainly, the third factor—the harm to Plaintiffs if a stay is entered—weighs against entry of a stay. Plaintiffs have an interest in exercising their constitutional rights. As this Court has interpreted this rapidly developing and uncertain area of the law, entering the stay requested by the Commissioner will affect the Plaintiffs' ability to exercise their rights under the Second Amendment. But this factor does not outweigh all the others. *See McCraw*, 2022 WL 3656996, at *12 ("Though Plaintiffs' interest in the vindication of their Constitutional rights suffers while the judgment is stayed, the stay is necessary to militate the possible negative effects of relying on the injunction while it is subject to appellate review and possible reversal."). And if this Court's ruling is affirmed on appeal, Plaintiffs and other aged 18 to 21 will be able to seek the permits in question then.

For all these reasons, the Court concludes that it is proper to enter a stay of the injunctive relief granted in the Court's March 31st Order for a period of 30 days, or if the Commissioner files an appeal, until that appeal is concluded.[4]

---

[4] Because the Court concludes that the entry of a stay is appropriate under Fed. R. Civ. P. 62(d), the Court does not address the Commissioner's alternative argument that the Court should grant the same relief under Fed. R. Civ. P. 60(b)(6).

### III. Order

Based on the foregoing, the Court enters the following Order:

1. The Clerk of Court is directed to enter final judgment in this matter consistent with the terms of the Court's March 31, 2023 Order;

2. The Commissioner's Motion for a Stay [Doc. 85] is **GRANTED**; and

3. The injunction granted by the Court's March 31, 2023 Order is stayed for 30 days, or pending appeal, for the duration of the appellate process.

Date: April 24, 2023

*s/ Katherine Menendez*
Katherine Menendez
United States District Judge